# EXHIBIT 4
# PART 2

iii.    MATHEWS stated, "During Q1: 2001, AremisSoft was successful in expanding its emerging markets business with new contracts in the following areas: Poland - manufacturing; Russia - manufacturing; Slovania [sic] - manufacturing; India - healthcare; United Arab Emirates - healthcare."

53.    With respect to AremisSoft's 2000 fiscal year, the Company's internal books and records reflected the following:

a.    Approximately $91.2 million of the Company's $123.6 million in purported revenue for its 2000 fiscal year were derived from customers located in emerging markets;

b.    Approximately $88.5 million of AremisSoft's purported $91.2 million in emerging markets revenues were derived from contracts with approximately 43 customers; and

c.    AremisSoft's purported sales to its approximately 43 emerging markets customers were conducted through six third-party "sales agents": Orimix; Agroservices; Poche and Co. GmbH; Zen Trade; Gravitas; and Con-Imp.

54.    In truth and in fact, as LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, well knew:

a.    Virtually all of AremisSoft's purported revenues from customers located in emerging markets were entirely fictitious;

33

b.    Many of AremisSoft's supposed emerging markets customers either did not exist at all or had done no business with AremisSoft; and

c.    The six "sales agents" through which AremisSoft conducted its emerging markets sales either did not exist, or were engaged in businesses entirely unrelated to the sale of AremisSoft software, including the businesses of meat supply and steel trading.

55.    The statements of LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, concerning AremisSoft's revenue and income from customers located in emerging markets presented a materially false and misleading picture of AremisSoft's true financial and business condition, thereby operating as a fraud and deceit upon investors in AremisSoft common stock.

### The Impact On The Price Of AremisSoft's Common Stock

56.    As a result of the false and misleading statements made by LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, concerning the business and financial condition of AremisSoft, false and misleading statements concerning the E-nnovations, E-Charm, and Denon acquisitions, and concerning AremisSoft's revenues and income, the price of AremisSoft's common stock was inflated artificially.

57.    In April 1999, AremisSoft's shares were offered to the public at a price of $5.00 per share. At their peak, in

34

November 2000, AremisSoft's common stock traded for approximately $49.50 per share. After the true nature of AremisSoft's business and financial condition was revealed, the price of its common stock plummeted to less than $1 per share.

### The Defendants' Sales Of AremisSoft Securities

58.    During the period in which LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, participated in misrepresenting AremisSoft's true business and financial condition to members of the investing public, and knew of such misrepresentations, and while the price of AremisSoft's common stock was artificially inflated, KYPRIANOU, POYIADJIS, and MATHEWS each sold AremisSoft securities, gaining for themselves substantial unlawful profits. As described more fully below, a substantial portion of these sales were conducted in secret transactions that were purposely concealed from members of the investing public.

### KYPRIANOU's Statements Regarding His
### Ownership And Disposition Of AremisSoft Securities

59.    During 2000 and 2001, AremisSoft and LYCOURGOS K. KYPRIANOU, the defendant, filed with the SEC a series of reports relating to KYPRIANOU's ownership and disposition of AremisSoft securities. AremisSoft also made public statements regarding KYPRIANOU's ownership and disposition of such securities. The reports and public statements included the following:

a.    The 1999 Annual Report, which was signed on behalf of AremisSoft by KYPRIANOU, among others, stated that, as of March 14, 2000, KYPRIANOU owned (i) 3,487,790 AremisSoft shares, which were held by LK Global (Holdings) N.V. ("LK Global"), a Netherlands corporation that KYPRIANOU controlled; and (ii) options to purchase 700,000 AremisSoft shares.

b.    On or about February 14, 2001, KYPRIANOU filed with the SEC an Annual Statement Of Changes In Beneficial Ownership on SEC Form 5, which purported to summarize changes in his ownership of AremisSoft securities during the year 2000.  In the Form 5, KYPRIANOU stated the following:

i.    On July 8, 2000, "for tax and estate planning purposes," LK Global had given 300,000 AremisSoft shares to Aremis Technology Ventures, a British Virgin Islands corporation controlled by KYPRIANOU's spouse;

ii.    On July 8, 2000, "for tax and estate planning purposes," LK Global had been re-incorporated as Aremis Holdings Ltd. ("Aremis Holdings"), a British Virgin Islands corporation, and, in connection therewith, Aremis Holdings had received as a gift 3,187,790 AremisSoft shares previously owned by LK Global (Holdings) Ltd.;

iii. On November 6, 2000, "for tax and estate planning purposes," Aremis Holdings had gifted to two unidentified donees a total of 1,600,000 AremisSoft shares;

iv.  In various transactions during November and December 2000, KYPRIANOU gifted to Sincock Holdings Corporation, an entity in which claimed to have no pecuniary or beneficial interest, all 2,900,000 of his options to purchase AremisSoft shares;

v.  KYPRIANOU had disposed of no other AremisSoft shares or options during 2000; and

vi.  As of December 31, 2000, KYPRIANOU owned through Aremis Holdings 3,175,580 AremisSoft shares, a figure that reflected a two-for-one stock split declared by AremisSoft on December 28, 2000.

c.  The 2000 Annual Report, which was signed on behalf of AremisSoft by KYPRIANOU, among others, stated that, as of March 8, 2001, KYPRIANOU was the beneficial owner of 3,775,580 AremisSoft shares, through Aremis Holdings Ltd. and through an entity controlled by KYPRIANOU's spouse.  The 2000 Annual Report further stated:

> As part of his overall tax and estate
> planning, during the year 2000, Dr. KYPRIANOU
> gifted a total of 3,200,000 shares of common
> stock beneficially owned by him, 1,600,000
> shares each to two entities in which he has
> no voting, beneficial or pecuniary interest.
> Dr. KYPRIANOU also gifted all of his options,
> representing the right to purchase 2,900,000
> shares of common stock, to an entity over
> which he has no voting, beneficial or
> pecuniary interest.  As of March 8, 2001,
> 2,633,332 of the options gifted by Dr.
> KYPRIANOU had been exercised for cash ....
> The Company believes that, as of March 8,
> 2001, all of the shares gifted or issued upon

the exercise of gifted options had been sold by the donees.

d.   On or about May 21, 2001, AremisSoft issued a press release reiterating the Company's previously-announced plan to buy back one million of its own shares, and also announcing that KYPRIANOU and ROYS S. POYIADJIS, the defendant, each planned personally to purchase 100,000 AremisSoft shares.  The press release stated, "In light of its recent trading price, the Company believes that its common stock is undervalued.  The share repurchase program as well as the individual share purchases by the Co-CEOs reflects management's continued confidence in the business."

e.   On or about June 11, 2001, KYPRIANOU filed with the SEC a Statement Of Changes In Beneficial Ownership on SEC Form 4, in which he stated that in transactions on May 24, 2001 and May 25, 2001, he had purchased 20,000 AremisSoft shares.

f.   On or about July 9, 2001, KYPRIANOU filed with the SEC a Statement Of Changes In Beneficial Ownership on SEC Form 4, in which he stated that in a transaction on June 1, 2001, he had purchased 80,000 AremisSoft shares.

**POYIADJIS' Statements Regarding His
Ownership And Disposition Of AremisSoft Securities**

60.  During 2000 and 2001, AremisSoft and ROYS S. POYIADJIS, the defendant, filed with the SEC a series of reports relating to POYIADJIS's ownership and disposition of AremisSoft securities.  AremisSoft and POYIADJIS also made public statements

38

regarding POYIADJIS' ownership and disposition of such securities. The reports and public statements included the following:

a.   The 1999 Annual Report, which was signed on behalf of AremisSoft by POYIADJIS, among others, stated that, as of March 14, 2000, POYIADJIS owned (i) 1,162,953 AremisSoft shares, which were held by Onyx Capital, Inc. ("Onyx"), a British Virgin Islands corporation that POYIADJIS controlled; and (ii) options to purchase an additional 700,000 AremisSoft shares.

b.   On or about February 14, 2001, POYIADJIS filed with the SEC an Annual Statement Of Changes In Beneficial Ownership on SEC Form 5, which purported to summarize changes in his ownership of AremisSoft securities during the year 2000. In the Form 5, POYIADJIS stated that:

i.   On September 19, 2000, for "pre-immigration estate planning purposes," Onyx had given away 779,620 AremisSoft shares to an unidentified donee;

ii.   On October 17, 2000 and December 7, 2000, Prime Growth, Inc. ("Prime Growth"), another British Virgin Islands corporation that POYIADJIS controlled, had given away to an unidentified donee 1,450,000 AremisSoft options;

iii.   POYIADJIS had disposed of no other AremisSoft shares or options during 2000; and

iv.   As of December 31, 2000, POYIADJIS owned no AremisSoft shares or options.

c.    The 2000 Annual Report, which was signed on behalf of AremisSoft by POYIADJIS, among others, stated that, as of March 8, 2001, POYIADJIS was the beneficial owner of 3,775,580 AremisSoft shares, and options to purchase 1,500,000 AremisSoft shares.  The 2000 Annual Report further stated:

> As part of his overall tax and estate planning, during the year 2000, Mr. Poyiadjis gifted 1,559,240 of his shares of common stock beneficially owned by him to an entity in which has no voting, beneficial or pecuniary interest.  Mr. Poyiadjis also gifted all of his options, representing the right to purchase 2,900,000 shares of common stock, to an entity in which he has no voting, beneficial or pecuniary interest. As of March 8, 2001, 2,766,666 of the options gifted by Mr. Poyiadjis had been exercised for cash .... The Company believes that, as of March 8, 2001, all of the shares gifted or issued upon the exercise of gifted options had been sold by the donees.

d.    On or about April 30, 2001, in New York, New York, POYIADJIS represented to a professional securities analyst that his AremisSoft shares had been placed into a "blind trust" over which he had no control and in which he had no beneficial interest.

e.    In an interview with the New York Times published on May 17, 2001, POYIADJIS stated that he had "gifted" away his AremisSoft shares to "a trust that wasn't just created to move the stock of AremisSoft so it could be sold."

f.    On or about June 11, 2001, POYIADJIS filed with the SEC a Statement Of Changes In Beneficial Ownership on

SEC Form 4, in which he stated that in transactions May 14, 2001 and May 24, 2001, he had purchased a total of 200,000 AremisSoft shares, through an entity known as Olympus Capital Investment, Inc.

### MATHEWS' Statements Regarding His Ownership And Disposition Of AremisSoft Securities

61. During 2000 and 2001, AremisSoft and M.C. MATHEWS, the defendant, filed with the SEC a series of reports relating to MATHEWS' ownership and disposition of AremisSoft securities, including the following:

a. The 1999 Annual Report, which was signed on behalf of AremisSoft by MATHEWS, among others, stated that, as of March 14, 2000, MATHEWS owned 35,000 AremisSoft shares.

b. On or about February 14, 2001, MATHEWS filed with the SEC an Annual Statement Of Changes In Beneficial Ownership on SEC Form 5, which purported to summarize changes in his ownership of AremisSoft securities during the year 2000. In the Form 5, MATHEWS stated the following:

i. On October 19, 2000, MATHEWS acquired 80,000 AremisSoft shares through the exercise of options;

ii. He had disposed of no AremisSoft shares or options during 2000; and

iii. As of December 31, 2001, he owned 80,000 AremisSoft shares and options to purchase an additional 80,000 shares.

c.    In Statements of Changes In Beneficial Ownership on SEC Form 4 that MATHEWS filed on or about May 10, 2001 and on or about July 9, 2001, MATHEWS stated the following:

i.    On April 30, 2001, MATHEWS acquired 40,000 AremisSoft shares through the exercise of options; and

ii.    On May 4, 2001, MATHEWS sold 40,000 AremisSoft shares.

**The Secret Sales Of AremisSoft Securities**

62.    The public statements made by AremisSoft and LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, regarding the ownership and dispositions of AremisSoft securities by KYPRIANOU and POYIADJIS were false and misleading when made. Contrary to their public statements, during 2000 and 2001, KYPRIANOU and POYIADJIS secretly disposed of millions of AremisSoft shares that they controlled, and then caused a substantial portion of the proceeds from those sales to be transferred into various off-shore bank accounts.

63.    The sales of AremisSoft securities by LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, were conducted principally in the following manner:

a.    KYPRIANOU and POYIADJIS arranged for AremisSoft shares and options to be transferred into the names of various nominees;

b.   KYPRIANOU and POYIADJIS caused AremisSoft options that they controlled to be exercised, purportedly by the nominees;

c.   KYPRIANOU and POYIADJIS arranged for the AremisSoft shares held by nominees to be transferred to agents located in Europe;

d.   The agents deposited AremisSoft shares with various banking institutions located in Switzerland and elsewhere (the "Foreign Banks");

e.   The Foreign Banks transferred the AremisSoft shares to Brown Brothers Harriman & Co. ("Brown Brothers"), a banking institution located in New York, New York;

f.   Brown Brothers arranged for the AremisSoft shares to be sold in open-market transactions on the NASDAQ; and

g.   The proceeds from the sales of the AremisSoft shares were transferred from Brown Brothers to banking institutions outside the United States, including in Switzerland, Greece, Cyprus, and the Isle of Man.

64.   The sales of AremisSoft shares by LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, were made while KYPRIANOU, POYIADJIS, and MATHEWS were in possession of material, non-public information regarding the true business and financial condition of AremisSoft, including information that AremisSoft had made material misrepresentations concerning the E-nnovations, E-Charm, and Denon acquisitions, and

43

concerning AremisSoft's revenues and income.  As officers and directors of AremisSoft, KYPRIANOU, POYIADJIS, and MATHEWS owed fiduciary duties to AremisSoft and its shareholders to abstain from trading in AremisSoft securities while in possession of such material, non-public information.  In breach of those duties, KYPRIANOU, POYIADJIS, and MATHEWS sold millions of shares of AremisSoft common stock, yielding unlawful proceeds of at least approximately $254 million.

65.  The secret sales of AremisSoft shares by LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, operated as a further fraud and deceit upon AremisSoft investors by misleading such investors into believing that KYPRIANOU and POYIADJIS were not disposing of their substantial AremisSoft holdings and that each maintained a positive view of AremisSoft's future prospects. In truth and in fact, KYPRIANOU and POYIADJIS knew that AremisSoft's business and financial condition had been materially misrepresented to the public, and each disposed of AremisSoft shares before the truth about the Company was publicly revealed.

### The Conspiracy

66.  From in or about 1999 through in or about 2001, in the Southern District of New York and elsewhere, LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to

44

wit, to commit (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) mail fraud, in violation of Title 18, United States Code, Section 1341; and (c) wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects Of The Conspiracy

### Securities Fraud

67.  It was a part and an object of the conspiracy that LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, and others known and unknown, unlawfully, wilfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon investors, in violation of Title 15, United States Code, Sections 78j(b) and

45

78ff, and Title 17, Code of Federal Regulations, Section
240.10b-5.

### Mail Fraud

68.  It was a further part and an object of the
conspiracy that LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and
M.C. MATHEWS, the defendants, and others known and unknown,
unlawfully, willfully, and knowingly, having devised and
intending to devise a scheme and artifice to defraud, and to
obtain money and property by means of false and fraudulent
pretenses, representations, and promises, for the purpose of
executing such scheme and artifice to defraud, and attempting to
do so, would and did place and cause to be placed in authorized
depositories for mail matter, matters and things to be sent and
delivered by the Postal Service and deposited matters and things
to be delivered by commercial interstate carriers, and would and
did take and receive therefrom, such matters and things, and
knowingly caused to be delivered by mail and such carriers
according to the directions thereon, such matters and things, in
violation of Title 18, United States Code, Section 1341.

### Wire Fraud

69.  It was a further part and an object of the
conspiracy that LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and
M.C. MATHEWS, the defendants, and others known and unknown,
unlawfully, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and to obtain money

46

and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce numerous writings, signs, signals, pictures and sounds, for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

<u>Means And Methods Of The Conspiracy</u>

70.   Among the means and methods by which LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a.    The defendants and their co-conspirators structured, negotiated, and engaged in "sham" acquisitions by AremisSoft of other software companies.

b.    The defendants and their co-conspirators caused AremisSoft to report fictitious and fabricated revenues.

c.    The defendants and their co-conspirators secretly disposed of their substantial holdings of AremisSoft securities, including in transactions conducted in New York, New York.

d.    The defendants and their co-conspirators caused AremisSoft to issue false and misleading press releases regarding the business and financial condition of AremisSoft.

47

e.    The defendants and their co-conspirators caused AremisSoft to file with the SEC false and misleading reports regarding the business and financial condition of AremisSoft, including Current Reports on Form 8-K, Quarterly Reports on Form 10-Q, and Annual Reports on Form 10-K.

f.    The defendants and their co-conspirators filed with the SEC false and misleading reports regarding their ownership and dispositions of AremisSoft securities.

g.    The defendants and their co-conspirators used and employed the means and instrumentalities of interstate and foreign commerce, including interstate and international telephone calls, facsimiles, wire transfers, and mailings.

### Overt Acts

71.    In furtherance of the conspiracy and to effect its unlawful objects, LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about March 4, 1999, in India, MATHEWS caused an advertisement to be placed in the Economic Times.

b.    On or about October 4 and 5, 1999, KYPRIANOU, POYIADJIS, and MATHEWS spoke to the AremisSoft Board of Directors regarding AremisSoft's proposed acquisition of E-nnovations.

c.    On or about December 17, 1999, KYPRIANOU executed a Share Purchase Agreement among AremisSoft, E-nnovations, and Spahn.

48

d.   On or about December 17, 1999, MATHEWS directed an AremisSoft accounting staffer to execute a Share Purchase Agreement among AremisSoft, E-nnovations, and Spahn.

e.   On or about December 30, 1999, KYPRIANOU signed the E-nnovations 8-K.

f.   On or about March 30, 2000, KYPRIANOU, POYIADJIS, and MATHEWS signed the 1999 Annual Report.

g.   In or about February 2000, in New Delhi, India, MATHEWS, met with the Medisoft Representative.

h.   In or about September 2000, in Trivandrum, India, MATHEWS met with the Nortech Representative.

i.   In or about September 2000, in Dubai, United Arab Emirates, POYIADJIS and MATHEWS met with the Vision Representative.

j.   In or about October and November 2000, in New York, New York, POYIADJIS caused approximately 400,000 AremisSoft shares to be sold from an account at Brown Brothers.

k.   In or about early October 2000, in Bangalore, India, POYIADJIS and MATHEWS met with the Medisoft Representative and the Nortech Representative

l.   In or about October 2000, in Nicosia, Cyprus, KYPRIANOU and MATHEWS met with the Vision Representative.

m.   In or about November 2000, in New York, New York, KYPRIANOU caused approximately 1,600,000 AremisSoft shares to be sold from an account at Brown Brothers.

49

n.    On or about November 17, 2000, KYPRIANOU, POYIADJIS, and MATHEWS spoke to the AremisSoft Board of Directors concerning the proposed acquisition of E-Charm.

o.    In or about December 2000, MATHEWS executed a Share Purchase Agreement among AremisSoft, E-Charm, and Still & Life.

p.    On or about December 19, 2000, POYIADJIS signed the E-Charm 8-K.

q.    On or about December 27, 2000, POYIADJIS spoke to the AremisSoft Board of Directors concerning the proposed acquisition of Denon.

r.    On or about December 28, 2000, MATHEWS executed a Share Purchase Agreement among AremisSoft and Denon.

s.    On or about January 10, 2001, POYIADJIS signed the Denon 8-K.

t.    On or about January 29, 2001, MATHEWS executed an agreement with the Vision Representative granting AremisSoft the option to purchase Vision.

u.    On or about February 14, 2001, KYPRIANOU filed with the SEC an Annual Statement Of Changes In Beneficial Ownership on SEC Form 5.

v.    On or about February 14, 2001, POYIADJIS filed with the SEC an Annual Statement Of Changes In Beneficial Ownership on SEC Form 5.

w.   On or about March 26, 2001, KYPRIANOU, POYIADJIS, and MATHEWS signed the 2000 Annual Report.

x.   On or about April 30, 2001, in New York, New York, POYIADJIS met with a professional securities analyst.

y.   On or about June 11, 2001, KYPRIANOU filed with the SEC a Statement Of Changes In Beneficial Ownership on SEC Form 4.

z.   On or about June 11, 2001, POYIADJIS filed with the SEC a Statement Of Changes In Beneficial Ownership on SEC Form 4.

aa.  On or about July 9, 2001, KYPRIANOU filed with the SEC a Statement Of Changes In Beneficial Ownership on SEC Form 4.

(Title 18, United States Code, Section 371.)

### COUNT TWO

(Securities Fraud: Fraud On The Market)

The Grand Jury further charges:

72.  The allegations contained in paragraphs 1 through 65 and paragraphs 70 and 71 are repeated and realleged as if fully set forth herein.

73.  From in or about 1999 through in or about 2001, in the Southern District of New York and elsewhere, LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants, unlawfully, wilfully, and knowingly, by the use of the means and

instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon investors in AremisSoft common stock.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

## COUNTS THREE THROUGH FIVE

(Securities Fraud: Insider Trading)

The Grand Jury further charges:

74.   The allegations contained in paragraphs 1 through 65.and paragraphs 70 and 71 are repeated and realleged as if fully set forth herein.

## Statutory Allegation

75.   On or about the dates set forth below, in the Southern District of New York and elsewhere, LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and M.C. MATHEWS, the defendants,

unlawfully, wilfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon investors, to wit:

| COUNT | DEFENDANT | APPROX. DATE | SECURITIES SOLD |
|-------|-----------|--------------|-----------------|
| THREE | KYPRIANOU | November and December 2000 | 1,600,000 AremisSoft Shares, originally held by Aremis Holdings and subsequently transferred to Lomond Finance, Inc. and Inlay Group, Inc. |
| FOUR | POYIADJIS | October and November 2000 | 400,000 AremisSoft Shares, held by Onyx Capital |
| FIVE | MATHEWS | May 2001 | 40,000 AremisSoft shares held by Emerging Markets Capital |

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Section 2.)

## COUNT SIX

(Conspiracy To Commit Money Laundering)

The Grand Jury further charges:

76. The allegations contained in paragraphs 1 through 65 and paragraphs 70 and 71 are repeated and realleged as if fully set forth herein.

### Statutory Allegation

77. From in or about 2000 through in or about 2001, in the Southern District of New York and elsewhere, LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, and others known and unknown, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other to violate Section 1956(a)(2)(B)(i) of Title 18, United States Code.

78. It was a part and an object of the conspiracy that LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, unlawfully, wilfully and knowingly would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and

54

disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, fraud in the sale of securities, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Means And Methods Of The Conspiracy

79. Among the means and methods by which LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a.    The defendants and their co-conspirators caused AremisSoft shares they controlled to be transferred into the names of various nominees.

b.    The defendants and their co-conspirators caused the AremisSoft shares held in the names of nominees to be deposited with the Foreign Banks.

c.    The defendants and their co-conspirators caused the AremisSoft shares held in the names of nominees to be transferred to Brown Brothers.

d.    The defendants and their co-conspirators caused the AremisSoft shares held in the names of nominees to be sold in open-market transactions on the NASDAQ.

e.    The defendants and their co-conspirators caused the proceeds from the sales of the AremisSoft shares held in the names of nominees to be transferred from Brown Brothers to

banking institutions outside the United States, including in Switzerland, Greece, Cyprus, and the Isle of Man.

### Overt Acts

80.  In furtherance of the conspiracy and to effect its unlawful objects, LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  On or about September 8, 2000, KYPRIANOU caused approximately $16,499,977 to be transferred by wire from Brown Brothers in New York, New York to Laiki Bank (Hellas) S.A., in Athens, Greece.

b.  On or about March 27, 2001, KYPRIANOU caused approximately $6,000,000 to be transferred by wire from Brown Brothers in New York, New York to Bank of Cyprus, Ltd., in Nicosia, Cyprus.

c.  On or about July 12, 2001, POYIADJIS caused approximately $44,634,000 to be transferred by wire from Brown Brothers in New York, New York to Isle of Man Bank, in Douglas, Isle of Man.

d.  On or about July 26, 2001, POYIADJIS caused approximately $44,669,000 to be transferred by wire from Brown Brothers in New York, New York to Fleming Isle of Man Limited, in Douglas, Isle of Man.

(Title 18, United States Code, Section 1956(h).)

## COUNTS SEVEN THROUGH TEN

(Money Laundering)

The Grand Jury further charges:

81.   The allegations contained in paragraphs 1 through 65 and paragraphs 70, 71, 79, and 80 are repeated and realleged as if fully set forth herein.

82.   On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants as set forth below, in offenses involving and affecting interstate and foreign commerce, unlawfully, wilfully and knowingly transported, transmitted, and transferred, and attempt to transport, transmit, and transfer, monetary instruments and funds from places in the United States to and through places outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, the defendants caused proceeds from the sale of AremisSoft common stock that was held in the names of nominees, which were the proceeds of fraud in the sale of securities, mail fraud, and wire fraud, to be transferred from Brown Brothers in New York, New York, to foreign financial institutions, as set forth below:

| COUNT | DEFENDANT | DATE | TRANSFER |
|-------|-----------|------|----------|
| SEVEN | KYPRIANOU | Sept. 8, 2000 | Approximately $16,499,977 million from Brown Brothers to Laiki Bank (Hellas) S.A. |
| EIGHT | KYPRIANOU | Mar. 27, 2001 | Approximately $6,000,000 from Brown Brothers to Bank of Cyprus, Ltd. |
| NINE | POYIADJIS | July 12, 2001 | Approximately $44,634,000 from Brown Brothers to Isle of Man Bank |
| TEN | POYIADJIS | July 26, 2001 | Approximately $44,669,000 from Brown Brothers to Fleming Isle of Man Limited |

(Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.)

### COUNTS ELEVEN THROUGH FOURTEEN

(Money Laundering)

The Grand Jury further charges:

83.  The allegations contained in paragraphs 1 through 65 and paragraphs 70, 71, 79, and 80 are repeated and realleged as if fully set forth herein.

84.  On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants as set forth below, in offenses involving and affecting interstate and foreign commerce, unlawfully, wilfully and knowingly engaged and attempted to engage in monetary transactions in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity, to wit, the defendants

58

caused the proceeds of fraud in the sale of securities, mail
fraud, and wire fraud to be transferred from Brown Brothers in
New York, New York, to foreign financial institutions, as set
forth below:

| COUNT | DEFENDANT | DATE | TRANSFER |
|---|---|---|---|
| ELEVEN | KYPRIANOU | Sept. 8, 2000 | Approximately $16,499,977 million from Brown Brothers to Laiki Bank (Hellas) S.A. |
| TWELVE | KYPRIANOU | Mar. 27, 2001 | Approximately $6,000,000 from Brown Brothers to Bank of Cyprus, Ltd. |
| THIRTEEN | POYIADJIS | July 12, 2001 | Approximately $44,634,000 from Brown Brothers to Isle of Man Bank |
| FOURTEEN | POYIADJIS | July 26, 2001 | Approximately $44,669,000 from Brown Brothers to Fleming Isle of Man Limited |

(Title 18, United States Code, Section 1957 and 2.).

## FORFEITURE ALLEGATIONS AS TO COUNTS ONE THROUGH FIVE

85.    The allegations contained in Counts One through
Five of this Indictment are repeated and realleged, as if fully
set forth herein, for the purpose of alleging forfeiture pursuant
to provisions of Title 18, United States Code, Section
981(a)(1)(C), and Title 28, United States Code, Section 2461.

86.    As the result of committing one or more of the
securities fraud violations alleged in Counts One through Five of
this Indictment, LYCOURGOS K. KYPRIANOU, ROYS S. POYIADJIS, and

M.C. MATHEWS, the defendants, shall forfeit to the United States,
pursuant to Title 18, United States Code, Section 981(a)(1)(C)
and Title 28, United States Code, Section 2461, all property,
real and personal, that constitutes or is derived from proceeds
traceable to the commission of the offenses, including but not
limited to the following:

      a.    Approximately $254 million, and all interest
and proceeds traceable thereto, in that such sum in aggregate is
property that constitutes or is derived from proceeds traceable
to the commission of the offenses;

      b.    Any and all right, title and interest held by
KYPRIANOU, POYIADJIS, or MATHEWS in the contents of Gerrard
Private Bank (IOM) Ltd., f/n/a Fleming Isle of Man Limited,
Account Number 2248772101, held in the name of Olympus Capital
Investment, Inc.;

      c.    Any and all right, title and interest held by
KYPRIANOU, POYIADJIS, or MATHEWS in the contents of Gerrard
Private Bank (IOM) Ltd., f/n/a Fleming Isle of Man Limited,
Account Number 2248820401, held in the name of Oracle Capital
Inc.;

      d.    Any and all right, title and interest held by
KYPRIANOU, POYIADJIS, or MATHEWS in the contents of Standard Bank
Isle of Man Limited Account Number 43016907, held in the name of
Olympus Capital Investment, Inc.; and

        e.     Any and all right, title and interest held by KYPRIANOU, POYIADJIS, or MATHEWS in the contents of Standard Bank Isle of Man Limited Account Number 43016908, held in the name of Oracle Capital Inc.

### Substitute Assets

87.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant --

(A)   cannot be located upon the exercise of due diligence;

(B)   has been transferred or sold to, or deposited with, a third party;

(C)   has been placed beyond the jurisdiction of the court;

(D)   has been substantially diminished in value; or

(E)   has been commingled with other property which cannot be divided without difficulty;

-- it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982.)

## FORFEITURE ALLEGATIONS AS TO COUNTS SIX THROUGH FOURTEEN

88.    The allegations contained in Counts Six through Fourteen of this Indictment are repeated and realleged, as if fully set forth herein, for the purpose of alleging forfeiture pursuant to provisions of Title 18, United States Code, Section 982.

89.    As the result of committing one or more of the money laundering offenses in violation of Title 18, United States Code, Sections 1956 and 1957, as alleged in Counts Six through Fourteen of this Indictment, LYCOURGOS K. KYPRIANOU and ROYS S. POYIADJIS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, all property, real and personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to the following:

a.    Approximately $254 million, and all interest and proceeds traceable thereto, in that such sum in aggregate is property that was involved in the money laundering offenses or is traceable to such property;

b.    Any and all right, title and interest held by KYPRIANOU and POYIADJIS in the contents of Gerrard Private Bank (IOM) Ltd., f/n/a Fleming Isle of Man Limited, Account Number 2248772101, held in the name of Olympus Capital Investment, Inc.;

c.    Any and all right, title and interest held by KYPRIANOU and POYIADJIS in the contents of Gerrard Private Bank

62

(IOM) Ltd., f/n/a Fleming Isle of Man Limited, Account Number 2248820401, held in the name of Oracle Capital Inc.;

     d.   Any and all right, title and interest held by KYPRIANOU and POYIADJIS in the contents of Standard Bank Isle of Man Limited Account Number 43016907, held in the name of Olympus Capital Investment, Inc.; and

     e.   Any and all right, title and interest held by KYPRIANOU and POYIADJIS in the contents of Standard Bank Isle of Man Limited Account Number 43016908, held in the name of Oracle Capital Inc.

### Substitute Assets

     90.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant --

    (A)   cannot be located upon the exercise of due diligence;

    (B)   has been transferred or sold to, or deposited with, a third party;

    (C)   has been placed beyond the jurisdiction of the court;

    (D)   has been substantially diminished in value; or

    (E)   has been commingled with other property which cannot be divided without difficulty;

-- it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982.)


FOREPERSON

JAMES B. COMEY
United States Attorney