UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
UNITED STATES OF AMERICA,        :
       :
                    Plaintiff,        :
       :     No. 07 Civ. 9235 (CSH)
           - against –        :
       :     **DECLARATION OF**
       :     **URSULA CASSANI**
       :
       :
LLOYDS TSB BANK PLC,        :
       :
                    Defendant.        :
-------------------------------------------------------------------- X

GENEVA, CANTON OF GENEVA,
SWITZERLAND.

      URSULA CASSANI declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

**Introduction**

      1.    I am a Professor at the University of Geneva Law School and licensed to practice law in Switzerland. I am an attorney of counsel to Lenz & Staehelin, Geneva, one of the largest business law firms in Switzerland. I submit this declaration in support of the motion by Defendant Lloyds TSB Bank plc ("Lloyds TSB") to dismiss the complaint of the United States of America (the "government" or "Plaintiff").

      2.    I studied law at the University of Geneva, Switzerland, graduating in 1979. I then became a Research and Teaching Fellow in criminal law at the University of Geneva Law School, while completing my post graduate studies, earning a post graduate degree in law (*diplôme d'études supérieures en droit*) in 1983 and a doctorate degree (PhD) in 1986. I became a Senior Lecturer in criminal law at the University of Geneva in 1992 and a tenured Professor (*professeur ordinaire*) in criminal law in 1995. I was a Visiting Research Fellow to the Institute of Advanced Legal Studies of the University of London in the winter term of

2003 / 2004. My field of research and of teaching is centered on business crimes, in particular money laundering, corruption, fraud and other crimes against property and pecuniary rights, the protection of secrecy, international cooperation in criminal law, confiscation (forfeiture), the protection of victims' rights, etc.

3. I was admitted to the bar in 1988 and practiced in the Cantons of Geneva and Zurich, Switzerland. During 1988/1989, I worked in the law firm of Cravath, Swaine & Moore in New York as a Foreign Associate. I then joined my current law firm in 1989 and retained an of counsel position upon my appointment as a Professor at the University of Geneva. Whereas my practice focused on civil litigation while I was at the beginning of my career, it is mostly in criminal law now.

4. I am a member of the committee of the Swiss Association of Criminal Law and the Geneva Association of Law and Legislation, as well as a member of the Geneva Bar Association, the Swiss Bar Association, the Swiss Association of Criminology and the Geneva Association of Business Law. I am also a member of the editorial board of two Swiss law reviews.

5. I have authored several publications on topics in criminal law, including the protection of Swiss sovereignty in collecting evidence for court proceedings, the relation between criminal law and civil law in crimes against property and other pecuniary interests, international confiscation, the definition of money laundering and the victim's rights under the Swiss Money Laundering provision. See the attached curriculum vitae, containing a selected list of my publications (Exhibit A hereto).

6. Based on my experience as a lawyer and an academic, I believe that I am fully competent to discuss the topics relating to Swiss law that are implicated by this action including matters of substantive Swiss law, in particular, with respect to questions of tort and criminal law.

7. The purpose of this declaration is to describe certain aspects of Swiss substantive law relevant to the claims set forth in the Complaint in the above-captioned action (the "Complaint") and to present an analysis of the relevant portions of Swiss substantive law.

8. In connection with this declaration, I have reviewed the Complaint and for present purposes, I have assumed the factual allegations stated therein to be true. I understand that the Complaint purports to state claims under the U.S. Money Laundering Control Act (the "MLCA"), and I am not here opining as to the MLCA or other aspects of U.S. law. However, it appears from pp. 11-12 of the Complaint, in which the government discusses at length the Swiss Federal Law on Combating Money Laundering in the Financial Sector, the Swiss banks' Code of Conduct with Regard to the Exercise of Due Diligence, the Swiss Federal Banking Commission's Guidelines, and Articles 305$^{bis}$ and 305$^{ter}$ of the Swiss Criminal Code, that the government recognizes that Swiss law governs the conduct of Lloyds TSB's Geneva branch.

### Insider trading and market manipulation are not predicate offenses under Swiss money-laundering law.

9. I understand that insider trading and market manipulation may constitute predicate offenses for purposes of U.S. money-laundering legislation. For the reasons set forth below, that is not true of Swiss money-laundering legislation.

10. The concealment of illicit profits is only money laundering under Swiss law if the assets are the result of a predicate offense punished as a "crime". This means that only offenses of the most serious category are predicate offenses. At the time relevant to the allegations of the Complaint, the concept of "crime" was defined in Article 9 (1) of the Swiss Penal Code ("SPC") (attached as Exhibit B). Article 9 (1) SPC considered offenses sanctioned with "penal servitude" ("réclusion", "Zuchthaus") as crimes;[1] if the punishment was only

---

[1] The SPC was revised on December 13, 2002, but the new law only entered into force on January 1, 2007 and did not apply retroactively. "Crimes" are now defined as offenses entailing imprisonment for over three years in

3

"imprisonment", the offense was one of lesser gravity, i.e. a "misdemeanor" ("délit"; "Vergehen"), and did not count among the predicate offenses of money laundering.

11. In accordance with Article 305$^{bis}$ (3) SPC, when the predicate offense occurs outside the territory of Switzerland, it must be shown that the particular act was punishable at the place it was committed and that it would constitute a "crime" as defined in Article 9 (1) SPC under Swiss law, if it had been committed in Switzerland. This is an expression of the condition of "double punishability" governing Swiss law. It is not necessary to show that the predicate offense was effectively prosecuted; however, it must be shown that the specific offense committed was indeed a punishable crime, i.e. that the perpetrator breached the law and was guilty, and that the offense was punishable at the place it was committed and would have been punishable as a crime if it had been perpetrated in Switzerland.

12. It appears from the face of the Complaint that the government relies, as the predicate conduct underlying its claims of money laundering against Lloyds TSB, on provisions of U.S. law that criminalize insider trading and/or market manipulation. I venture no opinion on whether such predicate offenses would support claims under U.S. law.

13. However, assuming that the predicate conduct relied on by the government in its complaint consists of insider trading and/or market manipulation, the government has failed to plead that the funds held by Lloyds TSB were the proceeds of an offense considered a crime under *Swiss* law.

14. Insider trading is prohibited by Article 161 SPC (attached as Exhibit C); the offense called "stock manipulation" ("market manipulation" according to the terminology used by the Financial Action Task Force (FATF)) is defined in Article 161$^{bis}$ SPC (attached as Exhibit D). Both offenses are punishable by imprisonment for up to three years. Therefore, they do not qualify as predicate offenses for money laundering as defined in the Swiss statute.

---

Article 10 (2) SPC; this new definition (which in any event does not apply to the time period described in the government's Complaint) would not affect the present analysis in any way.

15. Before Article 161$^{bis}$ SPC went into force on February 1, 1997, the Swiss Federal Supreme Court, ruling in a case involving a request for international cooperation in criminal matters, which is conditioned on the double punishability requirement, held that market manipulation could be considered as a case of criminal fraud under Article 146 SPC (Fondation F; ATF 122 II 422). Article 146 SPC is a crime punished with penal servitude and therefore a predicate offense for the purpose of Article 305$^{bis}$ SPC. However, this ruling was severely criticized as being inconsistent with the structure of Article 146 SPC.[2] It was surmised that the ruling was clearly geared at allowing Switzerland to assist the French securities commission in spite of the fact that the specific provision prohibiting market manipulation, although enacted by Parliament, was not yet in force and the double punishability requirement was not satisfied.[3] The ruling on Article 146 SPC made in Fondation F. must therefore be considered as an expedient which became unnecessary when the specific provision putting market manipulation under punishment went into force. Article 161$^{bis}$ SPC now governs stock market manipulation and overrules Article 146 SPC in application of the principles *"lex posterior derogat priori"* (more recent law prevails over earlier law) and *"lex specialis derogat legi generali"* (specific law prevails over general law). Authority either holds that Article 146 SPC should never have been applied to market manipulation and that the Fondation F. ruling was therefore made in breach of Swiss law[4] or that Article 161$^{bis}$ SPC prevails over Article 146 SPC, which does not apply.

16. As insider trading and market manipulation are not predicate crimes for money laundering offenses under Swiss law, financial intermediaries whose conduct is governed by

---

[2] Marc Amstutz / Mani Reinert, in Niggli Wiprächtiger, Strafgesetzbuch II, Kommentar, 2003, Art. 161$^{bis}$ N 7, 29; Marcel Alexander Niggli, Kursmanipulation als Betrug? Tatsachen, Täuschung und Stoffgleichheit am Beispiel von BGE 122 IV 422, Pratique Juridique Actuelle 1998 p. 407.

[3] Jacques Iffland, La notion de manipulation de cours illicite après l'arrêt *Fondation F.* et l'entrée en vigueur de l'art. 161$^{bis}$ CP in : Journée 1997 de droit bancaire et financier, Berne 1997, p. 75.

[4] Amstutz / Reinert, Art. 161$^{bis}$ N 29; Stefan Trechsel, Schweizerisches Strafgesetzbuch, Kurzkommentar, 2nd ed., 1997, Vor Art. 137, N 12.

Swiss law holding proceeds from such offenses are not only protected from a conviction for money laundering; they are also prohibited from making a suspicious transaction report or otherwise informing the criminal justice system or any other person of any suspicions or knowledge they may have of the fact that assets are proceeds from such offenses. Such information is protected by the secrecy owed by Swiss banks to their customers, and disclosure would be an offense under Article 47 Swiss Banking Act protecting banking secrecy, unless it was made to a Swiss Judge conducting a criminal investigation or in the context of international assistance in criminal matters.

17. The fact that insider trading and stock market manipulation are not predicate crimes for the purpose of a money laundering offense is not an oversight but a conscious choice of the Swiss legislative body. In January 2005, the Federal government published a first draft of a bill amending several provisions of Swiss law in order to bring it in conformity with the standards of the revised 40 Recommendations of the FATF, which mention insider trading and market manipulation in the glossary as "designated categories of offenses" within the meaning of Recommendation no. 1. This bill, however, was never enacted into law. Moreover, a new draft bill on the same subject, which was presented to Parliament on June 15, 2007, no longer proposes this amendment. In its explanatory report, the government states that the question of whether Articles 161 and 161$^{bis}$ SPC should become predicate offenses will be addressed in the context of a further revision of the law at a later point. Even if such an amendment is made in the future, it will not be held to apply retroactively under settled principles of Swiss law.

18. Nor do the circumstances described by the government in the Complaint's discussion of the underlying conduct of former AremisSoft Corporation directors and officers constitute any other predicate offenses. In particular, the offense of "false information about commercial companies" (Article 152 SPC), which applies to directors and officers giving

6

misleading information about a company to the public or the shareholders, is not a crime but a misdemeanor punished with imprisonment and therefore not a predicate offense.

19.  Article 251 SPC, punishing falsification of title, is a crime and therefore an offense serious enough to be a predicate offense. However, the Swiss Federal Supreme Court has ruled that in principle this offense could not produce "proceeds" which would be the subject of confiscation (ruling published in SJ 2001 I 330, attached, with English translation of relevant portions, as Exhibit E); this also means that there are no "proceeds" of such an offense which could be the object of money laundering. Furthermore, the government has not alleged that a document which could be considered a title was falsified, much less that Lloyds TSB was aware of this.

20.  Disloyal management committed with the intent of obtaining unjust enrichment (Article 158 (1)(3) SPC) is a crime punishable with penal servitude and therefore a predicate offense. However, the government has not alleged in the Complaint that Lloyds TSB held assets which were obtained through the disloyal management of AremisSoft's wealth. As I understand the allegations of the Complaint, the assets that Lloyds TSB is purported to have held on behalf of Kyprianou were obtained through market manipulation (art. 161$^{bis}$ SPC), not as the result of Kyprianou's disloyal management of AremisSoft's wealth, and therefore are not alleged to have been the proceeds of a predicate offense punishable at the relevant time by penal servitude.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24, 2008 at Geneva, Switzerland.

_____
Ursula Cassani