# EXHIBIT E

*Free Translation by Prof. U. Cassani*

<u>SJ 2001 I 330</u>

(Recital 3 a)

a) The offense must be the main and proximate cause of the obtainment of assets and those assets must typically flow from the offense in question. Causation must exist between the offense and the obtainment of assets such that the latter [the obtainment of assets] is the direct and immediate consequence of the former [the offense]. This is the case in particular when the obtainment of assets is an objective or subjective element of the offense or when it procures a direct profit flowing from the offense. However, the assets may not be considered to be the result of the offense when the offense only facilitated their later obtainment by a subsequent act which lacks immediate relation with the offense. Hence, when an offense against property, such as criminal fraud, is made possible by the forgery of a document (Article 251 SPC), the assets obtained are only the indirect consequence of that second offense (ruling of May 4, 1999 in the matter Z., published in SJ 1999 I 417; Niklaus Schmid, Kommentar, Einziehung, organisiertes Verbrechen, Geldwäscherei, vol. I Zurich 1999, Nos 30 and 34 seq. ad Art. 59; in the same book, Jürg-Beat Ackermann, No. 164 ad Art. 305bis CP; Baumann, Deliktisches Vermögen: dargestellt anhand der Ausgleicheinziehung, Zurich 1997, p. 131 seq. No. 5 and p. 177 seq. No. 3)

## EXTRAIT D'ARRÊT

**PROCÉDURE PÉNALE, CONFISCATION DU PRODUIT D'UN TRAFIC DE STUPÉFIANTS. TRACE DOCUMENTAIRE. PRODUIT DU BLANCHIMENT. — CP 59, 305bis; LStup 19, 24.**

3. — Invoquant l'art. 59 ch. 1 al. 1 CP, le recourant soutient d'abord que l'autorité cantonale a qualifié à tort le montant confisqué de «résultat d'une infraction au sens de cette disposition. En résumé, il expose que le blanchiment d'argent ne procure pas à son auteur des valeurs patrimoniales, dès lors que l'obtention de telles valeurs n'est pas un élément constitutif de cette infraction. En outre, toujours d'après lui, il n'a pas été démontré que l'argent confisqué provenait à l'origine d'un trafic de stupéfiants.

a) L'infraction doit être la cause essentielle et adéquate de l'obtention des valeurs patrimoniales et celles-ci doivent typiquement provenir de l'infraction en question. Il doit donc exister, entre l'infraction et l'obtention des valeurs patrimoniales, un lien de causalité tel que la seconde apparaît comme la conséquence directe et immédiate de la première. C'est en particulier le cas lorsque l'obtention des valeurs patrimoniales est un élément objectif ou subjectif de l'infraction ou lorsqu'elle constitue un avantage direct découlant de la commission de l'infraction. En revanche, les valeurs patrimoniales ne peuvent pas être considérées comme le résultat de l'infraction lorsque celle-ci n'a que facilité leur obtention ultérieure par un acte subséquent sans lien de connexité immédiat avec elle. Ainsi, lorsqu'une infraction contre le patrimoine, telle qu'une escroquerie, est rendue possible par un faux dans les titres (art. 251 CP), les valeurs patrimoniales obtenues ne sont que la conséquence indirecte de cette seconde infraction (arrêt du 4 mai 1999 en la cause Z., publié in SJ 1999 I 417; *Niklaus Schmid*, Kommentar, Einziehung, organisiertes Verbrechen, Geldwäscherei, vol. I, Zürich 1998, nº 30 et 34 ss ad art. 59; dans le même ouvrage, *Jürg-Beat Ackermann*, nº 164 ad art. 305bis CP; *Florian Baumann*, Deliktisches Vermögen: dargestellt anhand der Ausgleichseinziehung, Zürich 1997, p. 131 ss nº 5 et p.177 s. nº 3).

b) aa) En l'espèce, l'autorité intimée a constaté que la somme versée sur le compte du recourant avait été virée d'un compte alimenté par Z. à l'époque où celui-ci exerçait une activité intense de blanchiment d'argent issu du trafic de drogue. Elle en a conclu que les montants déposés sur ce dernier compte, dont les 180'000 £ versés au recourant, de manière à lier le Tribunal fédéral, que le montant confisqué provenant initialement d'un trafic de stupéfiants.

En conséquence, dans la mesure où le recourant conteste cette origine, il s'écarte de l'état de fait retenu, ce qu'il n'est pas habilité à faire dans le cadre d'un pourvoi, de sorte que celui-ci est irrecevable sur ce point.

bb) Par ailleurs, le recourant ne soutient pas que le montant en question ne peut plus être juridiquement considéré comme le produit d'une infraction au sens de l'art. 59 ch. 1 al. 1 CP au motif qu'il ne provient pas directement du trafic de stupéfiants mais qu'il a passé par le compte de la société S. — cas échéant après d'autres déplacements ou transformations antérieurs. En conséquence, il n'est pas nécessaire de trancher ici à quelles conditions les déplacements ou transformations du produit original d'une infraction s'opposent, ou non, à la confiscation de la valeur patrimoniale issue en dernier lieu.

Il n'est toutefois pas inutile de confirmer que, comme le soutient la doctrine majoritaire, lorsque le produit original de l'infraction formé de valeurs destinées à circuler, telles que billets de banque, devises, effets de change, chèques ou avoirs en compte, a été transformé à une ou plusieurs reprises en de telles valeurs, il reste confiscable aussi longtemps que son mouvement peut être identifié de façon certaine et documentée, à savoir tant que sa «trace documentaire» («Papersspur», «paper trail») peut être reconstituée de manière à établir son lien avec l'infraction (FF 1993 III 269 ss. spéc. p. 298 ss). Il sied également de confirmer qu'il peut en aller de même, dans certains cas, lorsque le produit original de l'infraction formé de telles valeurs est investi dans une chose corporelle telle qu'un immeuble, ou inversement, voire lorsqu'il passe à plusieurs reprises d'une forme à l'autre (*Schmid*, op. cit., nº 49 ss ad art. 59; *Ursula Cassani*, Commentaire du droit pénal suisse, partie spéciale, vol. 9, Berne 1996, nº 22 s. ad art. 305bis; *Baumann*, op. cit., p. 222 s. nº 5.4.6; ancien droit: *Hans Schultz*, Einführung in den allgemeinen Teil des Strafrechts, vol. II, 4e éd., Berne 1982, p. 209; *Louis Gaillard*, La confiscation des gains illicites, le droit des tiers [art. 58 et 58bis du Code pénal] in: Le rôle sanctionnateur du droit pénal, Fribourg 1985, p. 170 ss; contra: *Denis Piotet*, Les effets civils de la confiscation pénale, Berne 1995, nº 61 ss, *Jürg Lucius Müller*, Die Einziehung im schweizerischen Strafrecht [Art. 58 und 58bis], Berne 1993, p. 66 et 110 s.; ancien droit: *Günter Stratenwerth*, Allg. Teil II, Berne 1989, par. 14 nº 54 [voir toutefois du même auteur, Bes. Teil II, 5e éd., Berne 2000, par. 55 nº 28, pour le nouveau droit]).

cc) Enfin, peu importe que Z. soit, ou non, l'auteur du trafic de stupéfiants ayant généré la somme versée sur le compte du recourant. En effet, la confiscation intervient indépendamment de l'identification de l'auteur et de la punissabilité d'une personne déterminée (ATF 122

123e année                    N° 22                    12 juin 2001

SOMMAIRE. — *Tribunal fédéral (Cour de cassation pénale).* P. Escroquerie. Notion de coactivité. — *(2ème Cour civile).* A. c. B. Servitude d'empiètement. Validité. Prise en charge des frais d'entretien. — *Cour de justice (1ère Section).* Société suisse de radiodiffusion et télévision SSR Télévision suisse-romande (TSR) c. X. Protection de la personnalité. Atteinte par les médias non justifiée par le consentement de la victime, ni par un intérêt public prépondérant. Mesure provisionnelle non suivie de validation. — *Contributions récentes en français.*

TRIBUNAL FÉDÉRAL
*(Cour de cassation pénale)*
Audience du 23 janvier 2001
PRÉSIDENCE DE M. SCHUBARTH

P.

CP 18, 25, 146

ESCROQUERIE. NOTION DE COACTIVITÉ.

*Est un coauteur celui qui participe à une infraction au point d'apparaître comme un participant principal, même s'il n'a pas effectivement pris part à l'exécution de l'acte.*

*Faits (résumé):*

A. — Par arrêt du 14 février 2000, la Cour correctionnelle de Genève a condamné P. en qualité de coauteur, pour escroquerie, faux dans les titres et faux dans les certificats étrangers, à la peine de 12 mois d'emprisonnement, avec sursis pendant 5 ans.

B. — L'arrêt retient, en résumé, ce qui suit:

Le 11 février 1994, un inconnu a ouvert un compte auprès de l'agence de Gland de la banque A., en se légitimant au moyen d'une carte d'identité française au faux nom de François M. Le même jour, le nommé Roger K. s'est présenté à l'agence d'Onex de la même banque, en se légitimant avec la même carte d'identité. Il a présenté un eurochèque d'un montant de 96'692 fr. 10, libellé en faveur de François M. et tiré sur le compte d'une entreprise genevoise auprès de la banque B. Il savait que ce chèque, émis à l'origine en faveur d'une compagnie d'assurances, avait été falsifié de manière à faire apparaître François M. comme son bénéficiaire. Le montant du chèque a été crédité au compte de ce dernier. Un retrait de 1'000 fr. a été opéré le jour même auprès de la banque C. à Balexert puis, le 14 février 1994, cinq autres retraits, au total de 96'000 fr., ont été effectués dans différentes succursales de cette banque à Genève.

---

332

IV 91 c. 3b; 115 IV 175 c. 1: *Stefan Trechsel, Kurzkommentar, 2e éd., Zürich 1997, n° 8 ad art. 59).*

En conséquence, il sied de confirmer que la somme versée sur le compte du recourant est le résultat d'une infraction au sens de l'art. 59 ch. 1 al. 1 CP, soit d'un trafic de stupéfiants (cf. aussi art. 24 et 26 LStup).

c) Au demeurant, le montant en cause, constitué d'argent blanchi ou, pour le moins, en voie de blanchiment, peut également être confisqué au titre de résultat d'une infraction de blanchiment (punissable en Suisse par l'art. 305bis CP).

En effet, une fois blanchi, l'argent sale peut être investi ou placé dans l'économie légale, et cette possibilité d'utiliser de l'argent illégalement acquis est un avantage pécuniaire évident, découlant directement de l'infraction de blanchiment. L'argent blanchi ou en voie de blanchiment est dès lors confiscable en lui-même, indépendamment de l'infraction l'ayant généré *(Schmid, op. cit., n° 31 i.f. ad art. 59).* Dans ces conditions, l'argent blanchi ou en voie de blanchiment constitue le résultat de l'infraction de blanchiment au sens de l'art. 59 ch. 1 al. 1 CP. De même, la rétribution de l'auteur du blanchiment constitue également un produit confiscable de cette infraction *(Trechsel, op. cit., n° 13 ad art. 305bis).*

Encore peut-on confirmer que, tout comme les valeurs patrimoniales provenant d'autres infractions, lorsque l'argent blanchi ou en voie de blanchiment est constitué de valeurs destinées à circuler, cas échéant transformé par la suite en de telles valeurs, il reste confiscable si sa trace peut être reconstituée (cf. *Trechsel*, op. cit., n° 14 ad art. 305bis i.f.; *Baumann*, p. 116 ss n° 2.7, p. 185 n° 5.2.2 et p. 223 n° 5.4.6 i.f.; *Gunther Arzt*. Wechselseitge Abhängigkeit der gesetzlichen Regelung der Geldwäscherei und der Einziehung, in: Geldwäscherei, Prävention und Massnahmen zur Bekämpfung, Zürich 1997, p. 25 ss; *Ackermann*, op. cit., n° 211 ss).

*(Tribunal fédéral, Cour de cassation pénale, 19 février 2001. O. c. Procureur général de Genève).*

CONTRIBUTIONS RÉCENTES EN FRANÇAIS

*Baur Rita.* L'évolution des formes particulières d'assurance dans le cadre de la LAMal. In: *Sécurité sociale 2001, n° 1, p. 30-32.*

*Mollard Pascal.* TVA et taxation par estimation. In: *Archives de droit fiscal suisse 69(2001), n° 6/7, p. 511-561.*

*Oberson Xavier.* La nouvelle loi genevoise sur l'imposition des personnes physiques. In: *Semaine judiciaire, 2. Doctrine 123(2001), n° 1, p. 1-23.*

LA

# SEMAINE JUDICIAIRE

PARAISSANT À GENÈVE

## REVUE DE JURISPRUDENCE

CENT VINGT TROISIÈME ANNÉE
2001

Volumes I et II

GENÈVE
IMPRIMERIE FORNARA S.A.
2001