UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
UNITED STATES OF AMERICA,                        :
                                                 :
                        Plaintiff,               :
                                                 :
            v.                                   :   No. 07 Civ. 9235 (CSH)
                                                 :
                                                 :   **ECF Case**
                                                 :
LLOYDS TSB BANK PLC,                             :
                                                 :
                        Defendant.               :
-------------------------------------------------------------- X

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT LLOYDS TSB BANK PLC'S MOTION TO DISMISS THE COMPLAINT

LOVELLS LLP
Marc J. Gottridge (MG 1616)
Andrew M. Behrman (AB 5949)
Lisa J. Fried (LF 6968)
590 Madison Avenue
New York, New York 10022
(212) 909-0600
marc.gottridge@lovells.com
*Attorneys for Defendant Lloyds TSB Bank plc*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
ARGUMENT .............................................................................................................................. 2

I. THE COMPLAINT SHOULD BE DISMISSED
   FOR LACK OF SUBJECT MATTER JURISDICTION ................................................ 2

   A. The Government's New and Unpleaded "Conspiracy" Theory Does Not
      Justify Extraterritorial Jurisdiction Under the MLCA in This Action ................. 2

   B. The Alleged Securities Fraud Does Not Justify
      Extraterritorial Jurisdiction Under the MLCA in this Action .............................. 5

   C. Exercising Extraterritorial Jurisdiction in this Action is Contrary
      to the MLCA's Legislative History and the Express Promise
      Made to Switzerland by the U.S. Upon Enactment of the MLCA ...................... 6

   D. Applying the MLCA Extraterritorially to the Activities of Lloyds TSB in
      Switzerland Would be Unreasonable and Violate International Comity ............. 7

II. DUE PROCESS REQUIRES DISMISSAL OF THE COMPLAINT ............................ 10

III. THE COMPLAINT IS TIME-BARRED AS TO
     THE 75 PRE-SEPTEMBER 7, 2002 TRANSACTIONS ............................................... 11

     A. 28 U.S.C. § 2462 Provides the Applicable Statute of Limitations ..................... 11

     B. The Government May Not Rely on the "Last Overt Act" Rule
        to Salvage Count V As to Pre-September 7, 2002 Transactions ....................... 11

     C. Counts I-IV Are Similarly Time-Barred to the Extent
        they are Based on Pre-September 7, 2002 Transactions ................................... 12

     D. The Government Cannot Rely on the Fraudulent Concealment Doctrine ........ 13

IV. THE COMPLAINT FAILS TO STATE A CLAIM AS TO
    THE FIVE POST-SEPTEMBER 7, 2002 TRANSACTIONS ...................................... 14

V. COUNT III FAILS TO STATE A CLAIM .................................................................. 15

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

Page

**Cases**

*131 Main St. Assocs. v. Manko*,
   179 F. Supp. 2d 339 (S.D.N.Y. 2002) .................................................................................. 13

*3M Co. v. Browner*,
   17 F.3d 1453 (D.C. Cir. 1994) .................................................................................. 11, 12, 13

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983) ..................................................................................................... 13

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) ............................................................................................................... 10

*Blusal Meats, Inc. v. United States*,
   638 F. Supp. 824 (S.D.N.Y. 1986) .................................................................................. 11, 12

*Cuellar v. United States*,
   128 S. Ct. 1994 (2008) ........................................................................................................... 15

*EEOC v. Arabian American Oil Co.*,
   499 U.S. 244 (1991) ................................................................................................................. 5

*Fed. Election Comm'n v. Williams*,
   104 F.3d 237 (9th Cir. 1996) ................................................................................................. 13

*Fed. Savings & Loan Ins. Corp. v. Ticktin*,
   490 U.S. 82 (1989) ................................................................................................................... 2

*Filler v. Hanvit Bank*,
   No. 01 Civ. 9510 (MGC), 2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) ............................. 6

*Ford v. United States*,
   273 U.S. 593 (1927) ................................................................................................................. 5

*LaSala v. Lloyds TSB Bank plc*,
   514 F. Supp. 2d 447 (S.D.N.Y. 2007) .................................................................... 2, 6, 8, 15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ..................................................................................................... 10

*New York v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2d Cir. 1988) ................................................................................................. 13

*New York v. Niagara Mohawk Power Co.*,
   263 F. Supp. 2d 650 (W.D.N.Y. 2003) .................................................................................. 12

*Pinaud v. County of Suffolk*,
   52 F.3d 1139 (2d Cir. 1995) ................................................................................................... 12

*Sec. & Exch. Comm'n v. Jones*,
   476 F. Supp. 2d 374 (S.D.N.Y. 2007) ................................................................................... 13

*Sec. & Exch. Comm'n v. Power*,
   525 F. Supp. 2d 415 (S.D.N.Y. 2007) ................................................................................... 11

*Singleton v. City of New York*,
    632 F.2d 185 (2d Cir. 1980) .................................................................................. 12

*Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*,
    128 S. Ct. 761 (2008) ............................................................................................. 6

*Trawinski v. United Techs.*,
    313 F.3d 1295 (11th Cir. 2002) ............................................................................. 13

*U. S. Barite Corp. v. M. V. Haris*,
    534 F. Supp. 328 (S.D.N.Y. 1982) ........................................................................ 10

*United States v. Bodmer*,
    342 F. Supp. 2d 176 (S.D.N.Y. 2004) ..................................................................... 3

*United States v. Calderon*,
    169 F.3d 718 (11th Cir. 1999) ............................................................................... 14

*United States v. Columba-Colella*,
    604 F.2d 356 (5th Cir. 1979) .................................................................................. 6

*United States v. Dinero Express, Inc.*,
    313 F.3d 803 (2d Cir. 2002) .................................................................................. 15

*United States v. Giffen*,
    326 F. Supp. 2d 497 (S.D.N.Y. 2004) ..................................................................... 8

*United States v. Inco Bank & Trust Corp.*,
    845 F.2d 919 (11th Cir. 1988) ................................................................................. 4

*United States v. Javino*,
    960 F.2d 1137 (2d Cir. 1992) .................................................................................. 7

*United States v. Jolivet*,
    224 F.3d 902 (8th Cir. 2000) ................................................................................. 14

*United States v. Kramer*,
    73 F.3d 1067 (11th Cir. 1996) ............................................................................... 15

*United States v. Moloney*,
    287 F.3d 236 (2d Cir. 2002) .................................................................................. 12

*United States v. Ohio*,
    614 F.2d 101 (6th Cir. 1979) ................................................................................... 7

*United States v. Rutkoske*,
    506 F.3d 170 (2d Cir. 2007) .................................................................................. 11

*United States v. Sadighi*,
    199 F.3d 1334 (9th Cir. 1999) ................................................................................. 4

*United States v. Santos*,
    128 S. Ct. 2020 (2008) .......................................................................................... 14

*United States v. Stein*,
    No. 93-375, 1994 WL 285020 (E.D. La. June 23, 1994) ....................................... 4

*United States v. Stephenson*,
    183 F.3d 110 (2d Cir. 1999) .................................................................................. 15

*United States v. Tarkoff*,
  242 F.3d 991 (11th Cir. 2001) .................................................................................. 4

**Statutes & Rules**

New York Banking Law § 221-b(2) ........................................................................... 4

New York Civil Practice Law and Rules § 301 ...................................................... 10

New York Civil Practice Law and Rules § 302 ...................................................... 10

Title 12, United States Code, Section 3101(7) ......................................................... 4

Title 18, United States Code, Section 1956 .................................................... passim

Title 18, United States Code, Section 1957(d) ......................................................... 2

Title 18, United States Code, Section 3282 ............................................................ 11

Title 28, United States Code, Section 1345 .............................................................. 2

Title 28, United States Code, Section 2462 ............................................... 11, 12, 13

**Other Authorities**

Restatement (Third) of Foreign Relations Law of the United States § 402 (1987) ........................ 8

Restatement (Third) of Foreign Relations Law of the United States § 403 (1987) ..................... 7, 8

**PRELIMINARY STATEMENT**

In this civil penalty action, the government asserts four substantive MLCA[1] claims and one claim alleging that Lloyds TSB conspired with its former customer Kyprianou, a citizen of Cyprus, to launder money in violation of the MLCA. In opposing Lloyds TSB's motion to dismiss (the "Motion"), the government does not dispute that: all 80 transactions pleaded in the Complaint were executed in Geneva; no transaction involved transmitting funds to or from the U.S.; no one from the Bank came to or communicated with the U.S. in connection with any transaction; and the U.S. operations of Lloyds TSB had nothing to do with any transaction. Nor does the government deny that Lloyds TSB's activities in Geneva were governed by Swiss law.

Lloyds TSB's moving papers demonstrated that this action represents an unprecedented attempt to apply the MLCA to the Bank's purely Swiss conduct, and must be dismissed. In response, the government does not even assert that either Lloyds TSB or its erstwhile customer (and sole alleged co-conspirator) Kyprianou did anything *in the U.S.* to further the alleged money laundering. Instead, the government attempts to avert dismissal by conjuring up a different "conspiracy" from the one it actually pleaded. In opposing the Motion, the government for the first time suggests that the Bank conspired with *Poyiadjis* to launder funds. No such allegation was made either in the Complaint or in the pleadings of the Trustees, to whom the government is contractually bound to turn over any sums recovered in this action. From this unpleaded and unsupportable premise, however, the government now seeks to bootstrap a single fax sent by Poyiadjis in New York to *his agent* (not to the Bank) in Switzerland into a basis for penalizing the Bank under U.S. law for Swiss conduct that was lawful where it took place.

---

[1] Terms defined in Lloyds TSB's initial memorandum in support of this motion ("Mem.") have the same meaning when used in this reply memorandum. The government's memorandum in opposition to this motion is cited as "Opp." and the opposition declaration of AUSA Rua M. Kelly is cited as "Kelly Decl." Citations to "Gottridge Reply Decl." and to "McKendry Reply Decl." refer, respectively, to the reply declarations of Marc J. Gottridge and Kevin P. McKendry, both submitted herewith.

This sleight of hand is unavailing. Stripped (as it must be) of the irrelevancy of Poyiadjis's alleged U.S. conduct, this case represents simply a reach by the government for extraterritorial subject matter jurisdiction not permitted by the MLCA. And even if the MLCA authorized this suit (which it does not), applying the statute here would be unreasonable and violate international comity; exercising personal jurisdiction over Lloyds TSB in this case would also violate due process. Further, the government's claims based on 75 of the 80 transactions at issue – accounting for all but approximately $400,000 of the claimed $130 million penalty – are time-barred. And the government has failed to plead, other than in conclusory terms, elements of its substantive MLCA claims, requiring their dismissal for failure to state a claim.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

#### A. The Government's New and Unpleaded "Conspiracy" Theory Does Not Justify Extraterritorial Jurisdiction Under the MLCA in This Action

As Lloyds TSB has shown (*see* Mem. 9-19), the Complaint's allegations fall far outside the MLCA's limited grant of extraterritorial prescriptive jurisdiction.[2] In the Complaint, the government alleges a conspiracy solely between Lloyds TSB and its Geneva branch's former customer, Kyprianou.[3] But now, realizing that neither Lloyds TSB nor Kyprianou is even

---

[2] The government's citation to 28 U.S.C. § 1345 as a basis of subject matter jurisdiction (Opp. 9) adds nothing, as that statute's grant of subject matter jurisdiction when the government brings suit is expressly subject to the limitation "[e]xcept as otherwise provided by Act of Congress." As the government admits (Opp. 9), Section 1345 therefore is subject to exceptions set forth in more specific legislation, such as the MLCA (*see* 18 U.S.C § 1956(f), 1957(d)). *See generally Fed. Savings & Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 85 (1989).

[3] In the conspiracy claim (Count V) of the Complaint (Gottridge Decl. Ex. 1), the government pleads only that "Lloyds and Kyprianou unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate" specified MLCA provisions (*id.* ¶ 85). *See also id.* ¶¶ 86, 87, 88 and 89. Nowhere in the Complaint does the government allege that Poyiadjis was also a member of this conspiracy. Although the Complaint refers to a separate securities fraud conspiracy, among Poyiadjis, Kyprianou and others (*see, e.g., id.* ¶¶ 6-9), it does not allege that Lloyds TSB was a part of that "pump and dump" conspiracy. Indeed, the Bank could not have been a part of any such conspiracy because "[b]y the time Lloyds got the money, the fraud with respect to those investors to whom those shares had been sold was already complete....[T]he facts alleged make clear that all the money handled by Lloyds came from other banks after the shares had been sold." *LaSala v. Lloyds TSB Bank plc*, 514 F. Supp. 2d 447, 477 (S.D.N.Y. 2007) (dismissing Trustees' Action).

alleged to have *done anything in the U.S.* in connection with the transactions at issue, the government attempts to defeat the Motion and salvage the action by inventing a different supposed "conspiracy" – with Poyiadjis – based on allegations that it did not plead.

The government's opposition memorandum repeatedly refers to both Kyprianou and Poyiadjis as "Lloyds' co-conspirators."[4] From this unpleaded hypothesis, the government now asks this Court to apply the MLCA to over 80 Swiss transactions not touching the U.S. – all based on a *single act by Poyiadjis* in the U.S., *i.e.*, sending a fax to his agent Roger Meyer ("Meyer") in Geneva, instructing Meyer to transfer money from another Swiss bank to Lloyds TSB. *See* Opp. 10. This conduct, however, cannot be attributed to Lloyds TSB unless Poyiadjis was its agent or co-conspirator in the alleged money laundering. The Complaint is barren of any such assertion, and the government pleads no facts from which a Lloyds TSB-Poyiadjis money laundering conspiracy could be inferred. Lloyds TSB had no bank-customer – or any other – relationship with Poyiadjis and is not alleged to have ever communicated with him.

The government's failure to allege *either* actionable money laundering conduct by Lloyds TSB in the U.S. *or* such domestic conduct by any alleged agent or co-conspirator removes this action from the limited extraterritorial prescriptive jurisdiction permitted by 18 U.S.C. §§ 1956(f) and 1957(d) (*see* Mem. 9-15), and distinguishes it from *United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004) (cited at Opp. 11-12). In *Bodmer*, the defendant was alleged to

---

[4] Opp. 2; *see also* Opp. 1 ("Lloyds conspired with the *principals* of AremisSoft ...."); Opp. 2 ("Lloyds [fails to] acknowledge the connection between its conduct and the conduct of its *co-conspirators* ...."); *id.* ("Lloyds disingenuously ignores the allegation of the Government that it is a co-conspirator with the *principals* of AremisSoft ...."); Opp. 10 ("Lloyds conspired with *others* ...."); *id.* (referring to "its *co-conspirators*"); *id.* (referring to "the kind of conduct in which Lloyds engaged with AremiSoft's *principals*"); Opp. 24 (referring to "the *co-conspirators* Kyprianou and *Poyiadjis*" and averring that the Complaint "alleges that Lloyds and its *co-conspirators*, Kyprianou and *Poyiadjis*, maintained an agency relationship") (emphasis added). The government also states that it is pursuing this case against Lloyds TSB "for money laundering, where [it] actively conspired with [its] *customers in the United States*" (Opp. 3; emphasis added), but Kyprianou is the only person identified in the Complaint as a Lloyds TSB customer and the government does not allege that either he or Lloyds TSB did anything in this country with respect to the relevant transactions. By contrast, Poyiadjis may well have been "in the United States", but he never was (and is not alleged ever to have been) a Lloyds TSB customer.

3

have acted as the agent of a New York-based Delaware corporation involved in a bribery and money laundering scheme and to have conspired with U.S. citizens and "domestic concerns," as defined in the Foreign Corrupt Practices Act. *See id.*; Gottridge Reply Decl. Ex. 3, ¶¶ 6, 7, 15. Moreover, Bodmer's Swiss firm received directly from New York wire transfers of $58 million sent by co-conspirators employed by its U.S. client. *See id.* ¶¶ 22(d), (g), 26, 27(a), (b). But Lloyds TSB is not alleged to have conspired with anyone in, or received funds from, the U.S.

Equally off point is *United States v. Tarkoff*, 242 F.3d 991 (11th Cir. 2001) (cited at Opp. 12), affirming the MLCA conviction of a *U.S. citizen* who travelled to Israel from the U.S. specifically to conduct "financial transactions" subject to 18 U.S.C. § 1956(a)(1)(B). *See id.* at 995. Applying the nationality principle of prescriptive jurisdiction, the MLCA expressly provides for "extraterritorial jurisdiction over the conduct prohibited by [Section 1956] if (1) the conduct is by a United States citizen," 18 U.S.C. § 1956(f)(1), wherever it took place. This provision rendered Tarkoff's conduct subject to the MLCA. Lloyds TSB, however, is not a U.S. citizen but a foreign bank[5] that did not conduct any activity in the U.S. in connection with the alleged transactions. Therefore, 18 U.S.C. § 1956(f) does not confer jurisdiction over this action. The other cases cited by the government are equally inapposite.[6]

---

[5] The government's contention that Lloyds TSB, an English-incorporated bank headquartered in London, "can hardly be described as a 'foreign' bank" (Opp. 10 n.3) is contradicted by: Complaint (Gottridge Decl. Ex. 1) ¶ 18 ("Lloyds maintains a 'Supervised Institution, Foreign Branch' according to the State of New York Banking Department"); 12 U.S.C. § 3101(7) ("'foreign bank' means any company organized under the laws of a foreign country"); N.Y. Banking Law § 221-b(2) ("foreign banking corporation ... shall mean any banking institution organized under the laws of any jurisdiction other than the United States, any state of the United States or Puerto Rico"); and the New York Banking Department's website, http://www.banking.state.ny.us/sifbranc.htm (last visited June 18, 2008), listing Lloyds TSB as a "foreign bank." The assertion that "Lloyds TSB is registered as a domestic business corporation with the New York Department of State, with an executive office in New York, New York" (Opp. 10 n.3) is untrue. Lloyds TSB is registered with the New York State Banking Department, as a foreign bank; the Department of State website does not list it in its database of domestic business corporations. *See* http://appsext8.dos.state.ny.us/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY?p_entity_name= (last visited June 18, 2008).

[6] *See United States v. Sadighi*, 199 F.3d 1334, at *3 (9th Cir. 1999) (unpublished decision) (cited at Opp. 13) (one defendant was a U.S. citizen and "[s]everal overt acts performed by [both defendants] in furtherance of the international conspiracy occurred in the United States"); *United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920 (11th Cir. 1988) (cited at Opp. 12-13) (foreign bank conspired with persons located in the U.S. and "joined the conspiracy knowing that it would continue to operate in United States territory"); *United States v. Stein*, No. 93-375, 1994 WL 285020, at *5 (E.D. La. June 23, 1994) (cited at Opp. 13) (defendant, although located outside the U.S.,

4

Once Poyiadjis's single fax to Meyer is properly seen as irrelevant to the jurisdictional inquiry in this action, all that remains is the routine, and admittedly "necessary" (Complaint [Gottridge Decl. Ex. 1] ¶ 43), clearing transactions by correspondent banks relating to up to 37 of the 80 transactions – *i.e.*, those which were interbank transactions in U.S. dollars. But as a matter of law, such incidental correspondent banking transactions do not furnish a sufficient link to the U.S. to support subject matter jurisdiction. *See* cases cited at Mem. 13.[7]

Finally, even if the government could now rely on a supposed (but unpleaded) conspiracy with Poyiadjis to support extraterritorial jurisdiction over Lloyds TSB for Count V, that would not save its substantive money laundering claims (Counts I - IV). The government does not even attempt to connect its substantive claims to the actions of anyone in the U.S., or rebut the presumption that the MLCA does not apply extraterritorially except as specifically stated in the statute. *See, e.g., EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991); Mem. 15-18. At a bare minimum, those claims should be dismissed for lack of subject matter jurisdiction.

### B. The Alleged Securities Fraud Does Not Justify Extraterritorial Jurisdiction Under the MLCA in this Action

The government also tries to justify subject matter jurisdiction on the theory that Lloyds TSB laundered the proceeds of a securities fraud that occurred in the U.S. Opp. 13. But the underlying fraud and later money laundering are distinct, both as a matter of law and as pleaded.

---

personally "initiate[d] a transfer of funds from a place within the United States to [a] place outside the United States" and so "a portion of the conduct occurred in this country"). Finally, in *Ford v. United States*, 273 U.S. 593 (1927) (cited at Opp. 12), the Court affirmed the conviction of foreign defendants for conspiracy to import alcohol into the U.S., because their co-conspirators were "within the United States." *Id.* at 601.

[7] The government does not address these authorities, but instead cites an MLCA provision conferring personal – not subject matter – jurisdiction over foreign financial institutions maintaining correspondent bank accounts in the U.S. *See* Opp. 14 (citing 18 U.S.C. § 1956(b)(2)(A), (C). To read this provision as providing for extraterritorial *prescriptive* or subject matter jurisdiction would subject to the MLCA each purely foreign transaction, in any currency, of every foreign bank that happened to maintain a U.S. correspondent banking account – whether or not that account had anything to do with the transactions in question. This absurdity is in fact illustrated by the government's effort to pin MLCA liability on Lloyds TSB for executing dozens of intra-European transactions in euros or pounds sterling, involving no U.S. correspondent bank. *See* Complaint [Gottridge Decl. Ex. 1] ¶ 38, Entries 9, 11, 21, 31, 35-40, 42, 47-48, 50-52, 58, 61-62, 64-68, 70-75.

Lloyds TSB's alleged agreement with Kyprianou to launder money "is legally unrelated to the prior" securities fraud. *See United States v. Columba-Colella*, 604 F.2d 356, 359 (5th Cir. 1979) (reversing, for lack of subject matter jurisdiction, a British defendant's conviction for receiving a stolen vehicle in Mexico, where the defendant was not alleged to have participated in the underlying U.S. theft of the vehicle, and all of his conduct occurred in Mexico). The government has never claimed that Lloyds TSB is liable for the underlying AremisSoft securities fraud;[8] that separate conduct by others does not support jurisdiction over the MLCA claims here. Nor does the government allege that Lloyds TSB received any fraud proceeds from the U.S. To the contrary, as this Court stated in dismissing the Trustees' Action, "Lloyds received the tainted proceeds of Kyprianou's securities fraud from Bordier and Dominick, two Swiss private banks which had assisted in the conversion of shares to cash.... [A]ll the money handled by Lloyds came from other banks after the shares had been sold." *LaSala*, 514 F. Supp. 2d at 477.

### C. Exercising Extraterritorial Jurisdiction in this Action is Contrary to the MLCA's Legislative History and the Express Promise Made to Switzerland by the U.S. Upon Enactment of the MLCA

Upon enactment of the MLCA, Congress and the U.S. Department of Justice expressly assured foreign bankers and the government of Switzerland that the precise situation presented by this action would never occur. The premise of the Complaint is that Swiss employees of a foreign bank should be expected to know, follow and apply U.S. law as to transactions executed by their bank, occurring entirely in Switzerland – upon pain of a massive penal sanction. This flies in the face of the express disclaimer by the relevant Senate Committee of any "intention to

---

[8] The government raises the so-called "Confirmation Letter" to suggest some link between Lloyds TSB and the securities fraud. *See* Opp. 2 n.2, 7-8. But that fax from Lloyds TSB (in Switzerland) to the auditor of a Cypriot AremisSoft subsidiary (in Cyprus) is not alleged to have been included in any AremisSoft securities filing or public disclosure and could not give rise to any securities fraud claim as a matter of law. It simply was not a communication from Lloyds TSB to AremisSoft shareholders. *See Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 769 (2008) (affirming dismissal of securities fraud claims where defendants' allegedly deceptive acts "were not communicated to the public"). Nor could any shareholder have relied on the letter to the Cypriot auditor. *See id.; see also Filler v. Hanvit Bank*, No. 01 Civ. 9510 (MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003) ("The connection between plaintiffs' acquisition of stock ... and the representations by defendants to auditors in Korea is too attenuated to support a claim of common law fraud.").

impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws." S. Rep. No. 99-433, at 14 (1986); *see also* Letter from Deputy Assistant Attorney General James I.K. Knapp to Mr. David de Purye, Chargé d'Affaires of Switzerland, dated Sept. 12, 1986, 132 Cong. Rec. S17348-01, 1986 WL 789550 (Oct. 18, 1986); Mem. 18.

The government does not even attempt to justify this about-face, but instead cites from the legislative history two hypothetical situations intended to be covered by the statute (*see* Opp. 10-11), both involving *conduct in the U.S. by the defendant itself*: (1) a defendant transferring money from a U.S. bank to a foreign bank, or (2) a defendant arranging, while in U.S. territory, a transaction between two foreign banks. *See* S. Rep. No. 99-433, at 14. These scenarios are entirely inapposite. Lloyds TSB is not alleged to have done anything relevant to this action in the U.S., nor did it even receive the funds at issue from this country.

D.   **Applying the MLCA Extraterritorially to the Activities of Lloyds TSB in Switzerland Would be Unreasonable and Violate International Comity**

As previously demonstrated, it would be unreasonable under Restatement (Third) of Foreign Relations Law of the United States § 403(1) (1987), and would violate international comity, to apply the MLCA extraterritorially to the facts of this case. *See* Mem. 19-26. In response, the government suggests that "abstention" doctrines are always inappropriate "where the Government – as opposed to a private party – is the plaintiff." Opp. 2. That is plainly wrong. "Abstention from exercise of federal jurisdiction is not improper simply because the United States is the party seeking a federal forum." *United States v. Ohio*, 614 F.2d 101, 104 (6th Cir. 1979). The government also ignores *United States v. Javino*, 960 F.2d 1137, 1142-43 (2d Cir. 1992) (cited at Mem. 20, 23) (reversing conviction for possession of an incendiary bomb without proof of U.S. manufacture; "[e]ven had Congress intended all foreign manufacturers of firearms to comply with the requirements set out in the [relevant provision], there is substantial question as to whether it could lawfully have done so," because legislation

7

prohibiting extraterritorial conduct is impermissible "when the exercise of [such] jurisdiction is unreasonable") (quoting Restatement (Third) §§ 402 (1), 403(1)); *see also United States v. Giffen*, 326 F. Supp. 2d 497, 507 (S.D.N.Y. 2004) (dismissing portions of an indictment on comity grounds); Restatement (Third) § 403, comment f (reasonableness analysis applies to criminal and civil cases).

Turning to the factors considered under Restatement (Third) § 403 and the doctrine of international comity, the government utterly ignores the paramount Swiss interests in the conduct at issue. As this Court has already held in the Trustees' Action, "[w]hatever interest the United States has, it pales in comparison with that of Switzerland." *LaSala*, 514 F. Supp. 2d at 462. The events giving rise to this action are alleged to have taken place in Switzerland and Lloyds TSB's banking activities there were, as the government concedes (*see* Complaint [Gottridge Decl. Ex. 1] ¶¶ 32-37), governed by Swiss law – including Swiss money laundering statutes.

The overwhelmingly Swiss nature of the conduct at issue is confirmed by the Trustees' filing in Switzerland of a criminal complaint that was not disclosed to this Court by the Trustees and only recently obtained by Lloyds TSB (Gottridge Reply Decl. Exs. 1 and 2; *see* Gottridge Reply Decl. ¶ 4). The Trustees complained to the Swiss Prosecutor General that Meyer organized the laundering, in Switzerland, of proceeds of the AremisSoft securities fraud (*see* Gottridge Reply Decl. Exs. 1 and 2, ¶¶ 18, 95-119) and that the anti-money laundering provisions of Swiss penal law applied (*see id.* ¶¶ 120-128). They sought orders freezing accounts at Swiss banks, including Lloyds TSB in Geneva (*id.* ¶ 138(1)). The Trustees pleaded that "**Switzerland** was the center of gravity of the system put in place to receive the proceeds of the crimes and to launder them." *Id.* at p. 2 (emphasis in original). The U.S. government apparently approved of this resort to Swiss penal law. *See id.* ¶ 137 ("The United States authorities, in particular the Southern District of New York Prosecutor, have assured the Trustees

that they will closely work together with the Swiss authorities and that they will provide all necessary assistance in prosecuting the crimes and offenses under Swiss jurisdiction.").

Further, as Lloyds TSB has demonstrated – and the government does not deny – the 80 transactions at issue were entirely lawful under applicable Swiss legislation (*see* Mem. 21; Cassani Decl. ¶¶ 9-20; Opp. 15 n.6). It is manifestly unreasonable, and contrary to principles of international comity, for the U.S. government to support the Trustees' forum-shopping by asking this Court to apply U.S. law to penalize a foreign bank in Switzerland for its purely Swiss conduct, which was permitted under that jurisdiction's laws.

The government nevertheless argues that the U.S. interest predominates because no other forum "could have a greater interest than the United States in the enforcement of its own criminal and civil laws." Opp. 3. This tautology begs the question presented: Is it appropriate to impose U.S. laws to penalize a foreign bank under the MLCA for its activities that took place wholly abroad? That is for this Court to decide, construing the MLCA so as to avoid "bring[ing] it in conflict with the law of another state that has a clearly greater interest." Restatement (Third) § 403, comment g.

Nor is the government's interest in protecting U.S. citizens from securities fraud (*see* Opp. 15) entitled to weight here. As noted above (at p. 6), the government has not charged (and could not charge) Lloyds TSB with participation in the underlying AremisSoft securities fraud; it merely asserts separate money laundering claims relating to what it alleges are indirect proceeds of a securities fraud perpetrated by others.

The government grandly asserts that it "brings this action on behalf of the citizenry as a whole – not just to recover monies for a limited class of investors, but on behalf of the public at large." Opp. 3. The facts of this case disclose otherwise. The government undeniably only commenced this action at the Trustees' urging, after this Court had already dismissed the Trustees' Action. Nor does the government dispute that, pursuant to the Coordination

Agreement, any recovery it makes here would be paid directly to the Trustees for the benefit of Trust beneficiaries. *See* Gottridge Decl. Ex. 2 at 21-22, §§ 5.1, 5.2. At least on these peculiar facts, the government is not entitled to the deference that it claims.

## II. DUE PROCESS REQUIRES DISMISSAL OF THE COMPLAINT

The government terms "inexplicable" Lloyds TSB's "fail[ure] to disclose to the Court that it executed a Consent to Jurisdiction in favor of the United States that expressly waives any personal jurisdiction defense in this matter and any objection to [this] Court as a proper forum." (Opp. 1). But there is no mystery. That document was not executed by Lloyds TSB, but rather by its parent company. (*See* Kelly Decl. Ex. A; McKendry Reply Decl. ¶ 3).[9] It does not bind Lloyds TSB. *See U. S. Barite Corp. v. M. V. Haris*, 534 F. Supp. 328, 329-30 (S.D.N.Y. 1982) (parent's consent to arbitration did not bind subsidiary in absence of veil-piercing).

The government's "consent" argument and its citations to N.Y.C.P.L.R. §§ 301 and 302 and 18 U.S.C. § 1956(b) (*see* Opp. 17-24) are also entirely beside the point. The Motion challenges not whether Lloyds TSB could *ever* be subject to personal jurisdiction in New York, but rather whether it is reasonable, and consistent with due process, to subject it to such jurisdiction *in this action*. *See* Mem. 27-29. The government simply fails to meet this argument. It does not even try to distinguish *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996), which held that even where "a plaintiff has demonstrated the requisite minimum contacts between the defendant and the forum state, a court is required to continue to the 'reasonableness' stage of the inquiry and apply the five-factor test of *Asahi* to assess whether the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* at 573 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). All five *Asahi* factors weigh in favor of dismissal for lack of personal jurisdiction. *See* Mem. 27-29.

---

[9] The second document cited by the government – an order of the Federal Reserve Board (Kelly Decl. Ex. B) – also does not involve Lloyds TSB, but rather another separate corporation. *See* McKendry Reply Decl. ¶¶ 5, 6.

III.  THE COMPLAINT IS TIME-BARRED AS TO
      THE 75 PRE-SEPTEMBER 7, 2002 TRANSACTIONS

   A.   28 U.S.C. § 2462 Provides the Applicable Statute of Limitations

The government contends that the catch-all criminal statute of limitations set forth in 18 U.S.C. § 3282 governs here. That is incorrect. Section 3282 only applies to criminal cases: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, *unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.*" 18 U.S.C. § 3282 (emphasis added).[10]

The applicable statute is 28 U.S.C. § 2462 ("Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of a civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued...."). The government instituted this civil action under 28 U.S.C. § 1956(b), authorizing suit "for a civil penalty." Section 2462 is applicable "to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise." *3M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994).

   B.   The Government May Not Rely on the "Last Overt Act" Rule
        to Salvage Count V As to Pre-September 7, 2002 Transactions

The government again seeks to obscure the fundamental distinction between criminal and civil cases in arguing for the "last overt act" rule used in criminal conspiracy prosecutions. Opp. 25. But "the last overt act rule is not applicable to actions for civil conspiracy." *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 829 (S.D.N.Y. 1986). The government deems it

---

[10] The government argues that since the MLCA authorizes both criminal prosecutions and civil actions, this Court should apply Section 3282 to this civil action "to ensure consistency in the application and enforcement of the money laundering laws." Opp. 25 n.7. This is a "solution" to a problem that does not exist. Federal courts have no difficulty applying different statutes of limitations to civil actions and criminal cases arising under the same statute. *Compare United States v. Rutkoske*, 506 F.3d 170, 174 (2d Cir. 2007) (applying 18 U.S.C. § 3282 to criminal securities fraud prosecution under Section 10(b) of the Securities Exchange Act of 1934) *with Sec. & Exch. Comm'n v. Power*, 525 F. Supp. 2d 415, 424 (S.D.N.Y. 2007) (applying 28 U.S.C. § 2462 in action for civil penalty for violations of, *inter alia*, Section 10(b)).

"inconceivable" not to allow it to take advantage of this criminal law doctrine simply because it elected "to bring a civil enforcement action" rather than proceed criminally. Opp. 27. The inapplicability of the "last overt act" rule, however, is simply a necessary consequence of that decision. By the government's rationale, it would be equally "inconceivable" to require it to prove a criminal MLCA case beyond a reasonable doubt, rather than by a preponderance of the evidence, simply because it could have chosen to file a civil action instead.

Because the "last overt act" rule is inapplicable, "the occurrence of an act in furtherance of a civil conspiracy within the limitations period does not render every related but otherwise time barred conspiratorial act actionable." *Blusal Meats*, 638 F. Supp. at 830; *see also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156-57 (2d Cir. 1995) (affirming dismissal of conspiracy claims with respect to acts occurring outside the limitations period). Accordingly, Count V must be dismissed insofar as it is based on the 75 pre-September 7, 2002 transactions.

### C. Counts I-IV Are Similarly Time-Barred to the Extent they are Based on Pre-September 7, 2002 Transactions

The substantive money laundering claims (Counts I-IV) must also be dismissed as to the 75 pre-September 7, 2002 transactions. A civil penalty action must be brought within five years "from the date when the claim first accrued." 28 U.S.C. § 2462. "A claim normally accrues when the factual and legal prerequisites for filing suit are in place." *3M Co.*, 17 F.3d at 1460. As to each transaction, the statute runs from its occurrence. *See, e.g., New York v. Niagara Mohawk Power Co.*, 263 F. Supp. 2d 650, 660 (W.D.N.Y. 2003).[11]

The government argues that its claim only accrued upon its alleged discovery of the alleged money laundering. Opp. 29. But "a 'discovery of violation' rule does not apply to cases

---

[11] *United States v. Moloney*, 287 F.3d 236 (2d Cir. 2002) (cited at Opp. 28) does not alter this conclusion. That case raised a single question on appeal: "whether an indictment charging money laundering as a continuing offense states an offense which is cognizable, in the sense of charging conduct made illegal by statute." *Id.* at 239-40. The court answered the question in the affirmative, but did not address any statute of limitations issue, much less when a civil penalty claim for money laundering accrues. In the civil context, "[c]haracterizing defendants' separate wrongful acts as having been committed ... as a 'single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

governed by § 2462." *Sec. & Exch. Comm'n v. Jones*, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007). The only three Courts of Appeals to address the issue have so held. *Trawinski v. United Techs.*, 313 F.3d 1295, 1298 (11th Cir. 2002); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996); *3M*, 17 F.3d at 1460. The "discovery rule" was designed to address harms that do not manifest themselves until some time after the wrongful act, *e.g.*, exposure of workers to dangerous chemicals. *3M*, 17 F.3d at 1460. Accordingly, "the rule has only been applied to remedial," not civil penalty, claims because "liability for the penalty attaches at the moment of the violation" and "injuries or damages resulting from the violation are not part of the cause of action." *Id.* at 1460-61. The term "accrued" in Section 2462 therefore means "that the running of the limitations period in penalty actions is measured from the date of the violation." *Id.* at 1462. All pre-September 7, 2002 claims are thus time-barred.

### D.    The Government Cannot Rely on the Fraudulent Concealment Doctrine

The government nevertheless suggests it is entitled to toll the limitations period under the doctrine of fraudulent concealment. *See* Opp. 29-30. It bears the burden of pleading, with particularity, that (1) Lloyds TSB concealed the existence of the cause of action; (2) the government did not discover the alleged wrongdoing until after September 7, 2002; and (3) its continuing ignorance was not attributable to lack of diligence. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988); *see Armstrong v. McAlpin*, 699 F.2d 79, 88-89 (2d Cir. 1983) (affirming dismissal because "generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Rule 9(b)"). Even if calling the alleged money laundering scheme "self-concealing" (Opp. 30) satisfied the first element, the government still failed to plead the remaining elements, which focus on "whether the plaintiff had sufficient information to commence an action at an earlier point." *131 Main St. Assocs. v. Manko*, 179 F. Supp. 2d 339, 348 (S.D.N.Y. 2002). The government alleges no facts at all (let alone with

particularity) as to when it was first put on "notice of a potential claim" *id.*, nor of any due diligence it supposedly exercised.[12]

## IV. THE COMPLAINT FAILS TO STATE A CLAIM AS TO THE FIVE POST-SEPTEMBER 7, 2002 TRANSACTIONS

The government, moreover, has failed to plead facts supporting elements of its money laundering claims as to post-September 7, 2002 transactions. *See* Mem. 31-33. Sections 1956(a)(1)(A) and (a)(2)(A) (Counts I and III) require it to plead facts showing that Lloyds TSB's actions were designed to "promote the carrying on of specified unlawful activity," *i.e.*, the AremisSoft securities fraud. These provisions require conduct that "contribute[s] to the prosperity" or "further[s]" unlawful activity. *United States v. Santos*, 128 S. Ct. 2020, 2027 (2008) (citation omitted). But the AremisSoft fraud was terminated by October 2001, when this Court issued a permanent injunction against AremisSoft and its principals. (Complaint [Gottridge Decl. Ex. 1] ¶ 20). There is "no logic in the government's suggestion that [Lloyds TSB] could promote the carrying on of an already completed crime." *United States v. Jolivet*, 224 F.3d 902, 910 (8th Cir. 2000) (reversing Section 1956(a)(1)(A) conviction); *see also United States v. Calderon*, 169 F.3d 718, 722 (11th Cir. 1999) (same).

Sections 1956(a)(1)(B) and (a)(2)(B) (Counts II and III) require the government to plead facts supporting its claim that the five October 2002 transactions were designed to "conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity." The government does not explain how transactions through accounts admittedly belonging to Kyprianou-owned companies, made to fund his private yacht (Complaint [Gottridge Decl. Ex. 1] ¶ 38 n.11), could have been intended to "conceal or disguise." Absent such intent, there can be no MLCA violation. *See Cuellar v. United States*,

---

[12] The government says only that it "made a *supplemental* request to the Swiss Central Authority ... on October 4, 2002, which included a request for documents from Lloyds relevant to the AremisSoft fraud." Opp. 30 n.12 (emphasis added). It provides no factual support for this unpleaded assertion, and does not even attempt to explain when it made its *initial* request or what information it sought and received.

128 S. Ct. 1994, 2002 (2008) (reversing Section 1956(a)(2)(B) conviction); *United States v. Stephenson*, 183 F.3d 110, 120-21 (2d Cir. 1999) (reversing Section 1956(a)(1)(B) conviction).

V.  **COUNT III FAILS TO STATE A CLAIM**

The government argues that because it alleges that the funds supposedly laundered by Lloyds TSB originated in the U.S., it has sufficiently pleaded a violation of 18 U.S.C. § 1956(a)(2) (Count III). Opp. 33. This again improperly conflates the acts of Lloyds TSB with other parties' earlier and separate acts, for which the Bank cannot be held responsible. The Complaint does not allege that Lloyds TSB itself transported, transmitted or transferred any funds from or to the U.S., and this Court has already rejected that notion. *See LaSala*, 514 F. Supp. 2d at 477; pp. 2-6, above. To violate Section 1956(a)(2), the relevant transportation or transmittal of funds must be across an international border. *Cuellar*, 128 S. Ct. at 2002. Unlike in *United States v. Dinero Express, Inc.*, 313 F.3d 803, 807 (2d Cir. 2002) (cited at Opp. 33), all of Lloyds TSB's transactions were both initiated and completed wholly outside the U.S. Count III therefore fails as a matter of law. *See United States v. Kramer*, 73 F.3d 1067, 1072-73 (11th Cir. 1996) (reversing Section 1956(a)(2) conviction because the defendant was only involved in one transaction which occurred "totally outside" the United States).

## CONCLUSION

For the reasons stated by Lloyds TSB, the Complaint should be dismissed with prejudice.

Dated: New York, New York
June 20, 2008

Respectfully submitted,

LOVELLS LLP

By: _____
Marc J. Gottridge (MG 1616)
Andrew M. Behrman (AB 5949)
Lisa J. Fried (LF 6968)
590 Madison Avenue
New York, New York 10022
(212) 909-0600
marc.gottridge@lovells.com
*Attorneys for Defendant Lloyds TSB Bank plc*