UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,                :
                                         :
                     Plaintiff,          :
                                         :
        v.                               :    No. 07 Civ. 9235 (CSH)
                                         :
                                         :    **ECF Case**
                                         :
                                         :
LLOYDS TSB BANK PLC,                     :
                                         :
                     Defendant.          :
------------------------------------------------------------ X


**RESPONSE OF DEFENDANT LLOYDS TSB BANK PLC
TO THE GOVERNMENT'S SUR-REPLY MEMORANDUM OF LAW
<u>IN OPPOSITION TO MOTION TO DISMISS THE COMPLAINT</u>**


LOVELLS LLP
Marc J. Gottridge (MG 1616)
Andrew M. Behrman (AB 5949)
Lisa J. Fried (LF 6968)
590 Madison Avenue
New York, New York 10022
(212) 909-0600
marc.gottridge@lovells.com
*Attorneys for Defendant Lloyds TSB Bank plc*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I. THE COMPLAINT IS TIME-BARRED AS TO THE 75 PRE-SEPTEMBER 7, 2002 TRANSACTIONS .................................................................................................................. 1

    A. The Complaint Reveals on Its Face that It is Time-Barred As to the 75 Transactions, So Resolution of this Issue Is Not Premature ............................................................ 1

    B. 28 U.S.C. § 2462, Rather than the Catchall Criminal Limitations Statute (18 U.S.C. § 3282), is the Applicable Statute of Limitations ......................................................... 4

    C. The Government's "Continuing Violation" Theory Does Not Salvage the 75 Time-Barred Transactions ................................................................................................... 5

    D. The "Discovery Rule" Does Not Apply to Claims Governed by 28 U.S.C. § 2462 ... 6

    E. The Government Has Failed to Plead Facts Sufficient to Invoke the Fraudulent Concealment Doctrine ................................................................................................ 8

II. EXERCISING JURISDICTION OVER LLOYDS TSB IN THIS CASE WOULD VIOLATE DUE PROCESS ................................................................................................. 9

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*3M Co. v. Browner*,
  17 F.3d 1453 (D.C. Cir. 1994) ............................................................................ 2, 4, 7

*Abbas v. Dixon*,
  480 F.3d 636 (2d Cir. 2007) .................................................................................... 3

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) ...................................................................................... 8

*Barbaro v. United States*,
  No. 05 Civ. 6998 (DLC), 2006 WL 2882975 (S.D.N.Y. Oct. 10, 2006) ................. 3

*Blackwelder v. Millman*,
  522 F.2d 766 (4th Cir. 1975) ................................................................................... 6

*Blusal Meats, Inc. v. United States*,
  638 F. Supp. 824 (S.D.N.Y. 1986) .......................................................................... 6

*BRS Assocs. v. Dansker*,
  246 B.R. 755 (S.D.N.Y. 2000) ................................................................................ 3

*Buford v. Tremayne*,
  747 F.2d 445 (8th Cir. 1984) ................................................................................... 6

*Daniel v. Am. Bd. of Emergency Med.*,
  988 F. Supp. 112 (W.D.N.Y. 1997) ........................................................................ 5

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells*,
  9 F.3d 1060 (2d Cir. 1993) .................................................................................... 10

*Feige v. RCN Corp.*,
  No. 07 Civ. 8539 (AKH), 2008 WL 906070 (S.D.N.Y. Apr. 3, 2008)) .................. 9

*Feinberg v. Katz*,
  No. 99 Civ. 45 (CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002) ..................... 3

*Fezzani v. Bear, Stearns & Co.*,
  No. 99 Civ. 0793 (RCC), 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) .................... 8

*Harris v. City of New York*,
  186 F.3d 243 (2d Cir. 1999) ................................................................................ 2, 3

*In re Merrill Lynch Ltd. P'ships Litig.*,
  154 F.3d 56 (2d Cir. 1998) ...................................................................................... 8

*LC Capital Partners, LP v. Frontier Ins. Group, Inc.*,
  318 F.3d 148 (2d Cir. 2003) .................................................................................... 2

*Moll v. U.S. Life Title Ins. Co. of New York*,
  700 F. Supp. 1284 (S.D.N.Y. 1988) ........................................................................ 8

*Moneygram Payment Sys., Inc. v. Prima Check Cashing, Inc.*,
   No. 06 Civ. 1633 (GEL), 2006 WL 1594485 (S.D.N.Y. June 9, 2006) .................................. 10

*Peck v. Gen. Motors Corp.*,
   894 F.2d 844 (6th Cir. 1990) .................................................................................................. 5

*Peto v. Madison Square Garden Corp.*,
   384 F.2d 682 (2d Cir. 1967) ................................................................................................... 5

*Pinaud v. County of Suffolk*,
   52 F.3d 1139 (2d Cir. 1995) ............................................................................................... 6, 7

*Rotella v. Wood*,
   528 U.S. 549 (2000) ............................................................................................................... 7

*Sec. & Exch. Comm'n v. Alexander*,
   248 F.R.D. 108 (E.D.N.Y. 2007) ........................................................................................ 2, 7

*Sec. & Exch. Comm'n v. Caserta*,
   75 F. Supp. 2d 79 (E.D.N.Y. 1999) ........................................................................................ 4

*Sec. & Exch. Comm'n v. Power*,
   525 F. Supp. 2d 415 (S.D.N.Y. 2007) .................................................................................... 4

*Singleton v. City of New York*,
   632 F.2d 185 (2d Cir. 1980) ................................................................................................... 6

*Solow v. Stone*,
   163 F.3d 151 (2d Cir. 1998) ................................................................................................... 8

*United States v. Project on Gov't Oversight*,
   484 F. Supp. 2d 56 (D.D.C. 2007) .......................................................................................... 4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ............................................................................................................... 5

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 2

Federal Rule of Civil Procedure 9(b) ........................................................................................... 8

Title 15, United States Code, Section 15b .................................................................................... 5

Title 18, United States Code, Section 1956(b) ............................................................................. 7

Title 18, United States Code, Section 3282 .............................................................................. 4, 5

Title 28, United States Code, Section 2462 ........................................................................ passim

Title 42, United States Code, Section 1983 .................................................................................. 7

## PRELIMINARY STATEMENT

The government's sur-reply memorandum of law in opposition to Lloyds TSB's[1] motion to dismiss the Complaint (the "Sur-reply") addresses two branches of that motion. *First*, the government makes several arguments (*see* Sur-reply 1-8) in an effort to rebut the Bank's contention that the government's claims, to the extent based on transactions predating September 7, 2002, are time-barred, as asserted in Point V(A) of Lloyds TSB's initial memorandum of law ("Mem."). *Second*, the government argues that a document signed by Lloyds TSB's parent corporation supposedly vitiates Lloyds TSB's argument that the exercise of personal jurisdiction over the Bank in this action is unreasonable and therefore violates due process (*see* Mem. Point IV). As set forth below, the government is wrong, as a matter of law, on both issues.

## ARGUMENT

### I. THE COMPLAINT IS TIME-BARRED AS TO THE 75 PRE-SEPTEMBER 7, 2002 TRANSACTIONS

The bulk of the Sur-reply consists of a scattergun attack on Lloyds TSB's argument that the relevant statute of limitations bars the government's claims as to 75 of the 80 transactions alleged in the Complaint – *i.e.*, those which took place more than five years before the Tolling Date, September 7, 2007 (*see* Mem. 30-31; Reply Mem. 11-14). We deal with the government's contentions *seriatim*.

#### A. The Complaint Reveals on Its Face that It is Time-Barred As to the 75 Transactions, So Resolution of this Issue Is Not Premature

The government asserts that it would be premature for this Court to resolve the statute of limitations defense on this motion (*see* Sur-reply 1-2). The government, however, has misconstrued both Lloyds TSB's position and the relevant case law.

---

[1] Except as otherwise defined herein, terms defined in Lloyds TSB's previous memoranda in support of this motion have the same meaning when used in this Response.

NYCLIB01/NYAMB/138825.3

First, Lloyds TSB does *not* claim that it is "unclear on the face of the Complaint" that the claims are untimely (Sur-reply 2). To the contrary, Lloyds TSB's point is that the Complaint clearly reveals on its face that 75 of the 80 transactions occurred prior to September 7, 2002 and are therefore time-barred (*see* Mem. 30-31). Where a "complaint clearly shows the claim is out of time," dismissal on statute of limitations grounds is appropriate on a Rule 12(b)(6) motion. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (cited at Sur-reply 1). On this basis, the court in *Harris* affirmed the Rule 12(b)(6) dismissal of certain of the plaintiff's claims, *see id.* at 248-49, while reversing the dismissal of others, *see id.* at 249-50. *See also LC Capital Partners, LP v. Frontier Ins. Group, Inc.*, 318 F.3d 148, 157 (2d Cir. 2003) (affirming dismissal where the time bar was "sufficiently clear on the face of the complaint and related documents").

The issue presented by a Rule 12(b)(6) motion based on a limitations defense is "whether [the plaintiff] has alleged facts that could bring [its] claims within the applicable statutes of limitations." *Harris*, 186 F.3d at 247. The Complaint fails this test because it reveals on its face that 75 of the 80 allegedly wrongful transactions occurred before September 7, 2002. Gottridge Decl. Ex. 1, ¶ 38, Entries 1-75. Each transaction is alleged in the Complaint to be a violation of the MLCA. *See generally id.* ¶¶ 66, 72, 78. The statute of limitations as to each transaction pleaded therefore started to run on the day that transaction was executed. And under the applicable statute, "an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty." *3M Co. v. Browner*, 17 F.3d 1453, 1462 (D.C. Cir. 1994) (cited at Sur-reply 5-6).[2] Any claim based on the

---

[2] Lloyds TSB responds separately below (at Point I.B) to the government's argument that the civil penalty statute of limitations, 28 U.S.C. § 2462, does not govern this civil penalty action. As Judge Garaufis noted in *Sec. & Exch. Comm'n v. Alexander*, 248 F.R.D. 108, 116 (E.D.N.Y. 2007), all but one of the courts – including all three Courts of Appeals – to have determined when a civil penalty claim accrues for Section 2462 limitations purposes have concluded that such a claim "accrues at the time the violation giving rise to the penalties occurs." The court in *Alexander* found it unnecessary to decide this issue on the peculiar facts of that securities fraud case. *See id.* at 120.

75 pre-September 7, 2002 transactions is, accordingly, time-barred.[3]

The government nevertheless suggests that because five of the allegedly wrongful transactions occurred within the limitations period, the remaining 75 – which account for $129.6 million of the approximately $130 million in civil penalties the government seeks – should escape dismissal. *See* Sur-reply 2, 5. The government cites no authority supporting this argument, and ignores the fact that it is not uncommon for judges in this District to dismiss claims in part on limitations grounds, based on the dates of occurrence of the events pleaded. For example, in *Feinberg v. Katz*, No. 99 Civ. 45 (CSH), 2002 WL 1751135, at *19 (S.D.N.Y. July 26, 2002), this Court granted in part defendants' motion to dismiss plaintiff's common-law claims, dismissing them to the extent that they were based on conduct occurring outside of relevant statutes of limitations. *See also Barbaro v. United States*, No. 05 Civ. 6998 (DLC), 2006 WL 2882975, at *3 (S.D.N.Y. Oct. 10, 2006) (dismissing in part a prisoner's Federal Tort Claims Act suit, to the extent based on events occurring outside the limitations period, while allowing plaintiff to pursue the action to the extent it was based on events occurring after the relevant date); *BRS Assocs. v. Dansker*, 246 B.R. 755, 773 (S.D.N.Y. 2000) (dismissing common law fraud claims as to certain specified transactions because they were outside the statute of limitations, but denying the motion to dismiss to the extent transactions were within the statute).[4]

---

[3] The government's reliance on *Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) (cited at Sur-reply 1, 7) is misplaced. The Court there did not reverse the dismissal of the claims as time-barred, as the government states (*id.* 7), but to the contrary, affirmed that judgment. While holding that the District Court erred in dismissing *sua sponte* a *pro se* plaintiff's complaint against certain defendants, the Court of Appeals nevertheless affirmed its dismissal as time-barred because, on the other defendants' motion to dismiss, plaintiff presented arguments against defendants' statute of limitations defense, which the District Court properly rejected. *Id.* at 640. Here, too, the government has had the opportunity to argue to this Court why its claims are not time-barred, but those arguments lack merit.

[4] Rather than acknowledging that courts may (and not infrequently do) order the partial dismissal of claims to the extent they are time-barred, the government states that "striking a portion of the Complaint would not help focus discovery." Sur-reply 5. This is a *non sequitur*. The issue presented on this motion has nothing to do with discovery. The motion instead raises the threshold question whether the government has alleged facts which, if true, would bring its claims within the relevant statute of limitations. *See Harris*, 186 F.3d at 247.

### B.     28 U.S.C. § 2462, Rather than the Catchall Criminal Limitations Statute (18 U.S.C. § 3282), is the Applicable Statute of Limitations

The government next argues that because *criminal* prosecutions for MLCA violations are subject to the catchall *criminal* statute of limitations, 18 U.S.C. § 3282, that statute must also govern the accrual of claims for *civil penalties* – even though 28 U.S.C. § 2462 is a statute of limitations expressly governing civil penalty actions. The government's theory is that otherwise there would be a "bifurcated standard of accrual." Sur-reply 3. Not surprisingly, the government cites no authority for this novel proposition. Nor does it account for the numerous decisions in which courts have applied Section 2462 (not 18 U.S.C. § 3282) to civil penalty actions brought under statutes that, like the MLCA, provide both for criminal and civil enforcement but without specifying a statute of limitations for civil penalty actions. *See, e.g., United States v. Project on Gov't Oversight*, 484 F. Supp. 2d 56, 61 (D.D.C. 2007) (applying 28 U.S.C. § 2462 to civil penalty action under bribery statute where "one thing [was] conspicuously absent [from the statute's text]: a statute of limitations for either criminal or civil actions"); *Sec. & Exch. Comm'n v. Power*, 525 F. Supp. 2d 415, 424 (S.D.N.Y. 2007) (applying 28 U.S.C. § 2462 to civil penalty action under Securities Exchange Act of 1934); *Sec. & Exch. Comm'n v. Caserta*, 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999) (same as to Securities Act of 1933).

Section 2462 provides that "[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. This provision applies "to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise." *3M Co.*, 17 F.3d at 1461. Congress could have specifically provided, in enacting the MLCA, for a

-4-

different statute of limitations to apply to civil penalty actions under that statute. But it elected not do so. Accordingly, the timeliness of this action must be governed by Section 2462.[5]

### C. The Government's "Continuing Violation" Theory Does Not Salvage the 75 Time-Barred Transactions

The government next asserts that Lloyds TSB's alleged conduct constituted a "continuing violation" of the MLCA, so that all of its claims are timely, even under Section 2462, as long as a single unlawful transaction is alleged to have occurred within the limitations period. Sur-reply 3-4. The law is to the contrary.

In the first place, the principal authorities cited by the government (at Sur-reply 3) are not civil penalty actions, but private civil actions alleging antitrust conspiracies. Such cases are subject not to Section 2462 but to a different limitations statute, Section 4B of the Clayton Act, 15 U.S.C. § 15b. *See Peto v. Madison Square Garden Corp.*, 384 F.2d 682, 683 (2d Cir. 1967) (per curiam); *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 112, 119 (W.D.N.Y. 1997).

But even if these cases were relevant to the government's attempt to save its conspiracy count (Count V) in this civil penalty action, their analysis would undermine, not support, the government's position. In the antitrust conspiracy context, a plaintiff can only sue on, and recover damages for, those acts in furtherance of the conspiracy occurring within the relevant limitations period. *See Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) ("[P]laintiffs may sue only for damages that result from acts committed by the defendants within four years preceding commencement of suit.") (citation omitted; alteration in original) (cited at Sur-reply 4 n.1); *Daniel*, 988 F. Supp. at 120 n.6 ("Under *Zenith* [*Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)] ... the plaintiff is allowed to recover damages resulting

---

[5] The government's suggestion that Lloyds TSB has somehow conceded that the claims in the Complaint would be timely if 18 U.S.C. § 3282 applied (Sur-reply 2) is unfair and inaccurate. Lloyds TSB did not address that issue, for good reason: the criminal catch-all statute of limitations set forth in that statute is simply inapplicable to this action for a civil penalty. One could just as easily – and irrelevantly – say that the Bank "does not dispute" whether the claims would be timely under any one of the dozens of other, inapplicable statutes of limitations to be found in federal criminal or civil law.

only from those acts committed less than four years before commencement of the suit.") (citation omitted). Thus, even under the rationale of the cases it cites, the government could sue only for the five post-September 7, 2002 transactions, not the 75 earlier ones.

This result, moreover, is consistent with the proposition, "well settled in this circuit," that "the last overt act rule is not applicable to actions for civil conspiracy." *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 829-30 (S.D.N.Y. 1986) (citing *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980)). "The existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable ...." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1162 (2d Cir. 1995) (citation omitted) (affirming dismissal of claims as time-barred).[6]

And even if the government's assertion that the "alleged money laundering conspiracy" was a "continuing violation" (Sur-reply 4) could salvage its conspiracy claim (Count V), which it does not, that would have no effect on the pre-September 7, 2002 transactions in the government's substantive claims (Counts I-IV). In the civil context, "[c]haracterizing defendants' separate wrongful acts as having been committed ... as a 'single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." *Singleton*, 632 F.2d at 192.

### D. The "Discovery Rule" Does Not Apply to Claims Governed by 28 U.S.C. § 2462

The government also contends that the "discovery rule" tolls the statute of limitations under 28 U.S.C. § 2462, so that a civil penalty claim "accrues only when it is discovered by the claimant." Sur-reply 6. This flies in the face of the holdings of the only three Courts of Appeals (and all but one of the District Courts) to have addressed the issue. *See generally* Reply 13.

---

[6] To the extent that the government relies on out-of-circuit cases that may apply the "last overt act rule" in civil conspiracy cases (*see Buford v. Tremayne*, 747 F.2d 445, 448 (8th Cir. 1984); *Blackwelder v. Millman*, 522 F.2d 766, 776 n.31 (4th Cir. 1975) (cited at Sur-reply 4 n.1)), such decisions are inconsistent with Second Circuit precedent.

While ignoring the on-point case law, negating its position, the government relies on two cases that were not civil penalty actions, and therefore not governed by Section 2462, at all – *Rotella v. Wood*, 528 U.S. 549 (2000) (a civil RICO action) and *Pinaud* (a 42 U.S.C. § 1983 action) – as well as a securities fraud case (*Alexander*) that was subject to Section 2462 but in which the court expressly declined to determine the issue.[7] See Sur-reply 6.

In any event, the Supreme Court's analysis in *Rotella* is entirely consistent with the rationale for federal courts' nearly unanimous rejection of the "discovery rule" in Section 2462 cases. The Court there explained that "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555. However, in the civil penalty context, "discovery of the injury" is an irrelevant concept. As explained in *3M Co.*, 17 F.3d at 1460, "[t]he 'discovery rule' rests on the idea that plaintiffs cannot have a tenable claim for the recovery of damages unless and until they have been harmed," this concept applies to "[d]amage claims in cases involving hidden injuries or illnesses." By contrast, "[i]n an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage." *Id.* 18 U.S.C. § 1956(b), which authorizes civil penalty actions for MLCA violations, contains no "injury" requirement. Discovery of injury is immaterial, "[b]ecause liability for the penalty attaches at the moment of the violation . . . ." *3M Co.*, 17 F.3d at 1461. Applying the "discovery rule" to civil penalty cases such as this one therefore would make no sense.

---

[7] In *Alexander*, 248 F.R.D. at 118, the SEC argued that the reasoning of *3M Co.*, and the other cases rejecting the "discovery rule" in civil penalty actions subject to the time bar of Section 2462, should not apply to civil penalty actions for fraud. Judge Garaufis, without deciding the issue, observed that "case law concerning the meaning of 'accrue' in the context of fraud cases is far more ambiguous . . . than in the non-fraud context addressed by the *3M* court." *Id.* at 120. This case, of course, is not a fraud action, but rather a civil penalty action for alleged violations of the MLCA. Whatever the merits of the position advanced by the SEC in *Alexander*, it affords no basis to argue against the application *to this action* of the rationale of *3M Co.* and the other authorities rejecting the "discovery rule" under Section 2462. See *Alexander*, 248 F.R.D. at 116; Reply Mem. 12-13.

-7-

### E. The Government Has Failed to Plead Facts Sufficient to Invoke the Fraudulent Concealment Doctrine

The government finally seeks refuge in the doctrine of fraudulent concealment. *See* Sur-reply 7. However, the government fails to acknowledge that under the law of this Circuit, it bears the burden of pleading the required elements of fraudulent concealment, upon pain of dismissal. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (per curiam) (affirming 12(b)(6) dismissal where plaintiffs failed to adequately plead the elements of fraudulent concealment); *Armstrong v. McAlpin*, 699 F.2d 79, 88-89 (2d Cir. 1983) (same).

Moreover, the facts supporting the supposed fraudulent concealment must be pleaded with the particularity required by Fed. R. Civ. P. 9(b). Contrary to the government's suggestion (*see* Sur-reply 7 n.3), the pleading of such facts is subject to Rule 9(b) even where, as here, the underlying claims are not based on alleged fraud. *See, e.g., Solow v. Stone*, 163 F.3d 151 (2d Cir. 1998) (affirming dismissal of tortious interference claim because plaintiff "failed to allege fraudulent concealment with the requisite specificity" demanded by Rule 9(b)); *Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793 (RCC), 2005 WL 500377, at *8 (S.D.N.Y. Mar. 2, 2005) (dismissing aiding and abetting breach of fiduciary claim because even if allegations of fraudulent concealment "were sufficient to satisfy notice pleading requirements, they do not meet the heightened pleading standard for allegations of fraud"); *Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1289-93 (S.D.N.Y. 1988) (dismissing Real Estate Settlement Procedures Act claim as time-barred for failure to plead fraudulent concealment with particularity). In its Sur-reply, the government does not, and cannot, point to any allegation in the Complaint – let alone any pleaded with particularity – that would justify application of the

fraudulent concealment doctrine.[8]  That doctrine therefore poses no impediment to dismissing the claims to the extent based on the 75 pre-September 7, 2002 transactions.

## II.   EXERCISING JURISDICTION OVER LLOYDS TSB IN THIS CASE WOULD VIOLATE DUE PROCESS

In opposing that branch of Lloyds TSB's motion to dismiss which contends that it is unreasonable, and therefore violates due process, to require the Bank to defend this Swiss-centered action in New York (Mem. 26-29), the government relied on a letter to the Federal Reserve, which it argued constituted a "consent[] to jurisdiction in matters involving violations of United States laws." Opp. 3, citing Kelly Decl. Ex. A. In reply, Lloyds TSB pointed out that the letter was not executed by Lloyds TSB but by its parent company (Lloyds TSB Group plc, defined in the document as "Lloyds Group"). Reply Mem. 10. The government now argues that the consent to jurisdiction nevertheless binds Lloyds TSB as well as Lloyds Group, because the document contains a footnote reference to "subsidiaries and affiliates." Sur-reply 8. This is a misreading of Lloyds Group's letter.

That letter contains two separate references to subsidiaries or affiliates: In the first paragraph of the text, Lloyds Group commits to make available to the Federal Reserve certain information about the operations of any "affiliate" of Lloyds Group. Footnote 2 defines the term "U.S. Banking Law" to include "without limitation, all provisions of Title 12, United States Code, as from time to time may be applicable to Lloyds Group, its subsidiaries and affiliates." Kelly Decl. Ex. A. But neither of these references contains the consent to jurisdiction on which the government relies. That consent instead is contained in the letter's second paragraph, which begins, "In addition, *Lloyds Group* consents to the jurisdiction of the federal courts of the United

---

[8] Although courts may, on a motion to dismiss, rely on documents outside a complaint if the plaintiffs relied on such documents in bringing suit (*Feige v. RCN Corp.*, No. 07 Civ. 8539 (AKH), 2008 WL 906070, at *1 (S.D.N.Y. Apr. 3, 2008)), the government points to no such documents in support of its "fraudulent concealment" argument. Instead, it simply repeats unsupported factual assertions made for the first time in its opposition brief (Sur-reply 8 n.4) without explaining why it is permissible for the Court to consider such assertions on a motion to dismiss.

States...." (emphasis added). Notably absent from this paragraph – in contrast to the first paragraph or footnote 2 – is any commitment binding Lloyds TSB, a separate corporation, or any of Lloyds Group's other affiliates or subsidiaries, to the parent's consent. Lloyds Group's consent is irrelevant to the question of personal jurisdiction over Lloyds TSB.

The government's authorities also miss the mark. *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060 (2d Cir. 1993) (cited at Sur-reply 9) merely held that a non-signatory was bound by the arbitration clause of an agreement when it received but failed to object to that agreement and offered no persuasive reasons for its inaction. *Deloitte*, however, did not involve a consent to personal jurisdiction – much less the reasonableness and constitutionality of exercising personal jurisdiction over the non-signatory. Although federal courts are bound by statute to implement "the federal policy favoring arbitration," *id.* at 1063, no such presumption favors expansively interpreting consents to jurisdiction, particularly in the face of a due process claim. *Moneygram Payment Sys., Inc. v. Prima Check Cashing, Inc.*, No. 06 Civ. 1633 (GEL), 2006 WL 1594485, at *3 (S.D.N.Y. June 9, 2006) (cited at Sur-reply 9), likewise did not involve a consent to jurisdiction, but instead whether the affiliate of a signatory to a trust agreement could assert counterclaims under that contract, which expressly included the signatory's "affiliates" in its definition of the term "Trustee." By contrast, Lloyds TSB was not defined within the term "Lloyds Group" in the letter the government cited (Kelly Decl. Ex. A).

Accordingly, unless the government can pierce the corporate veil – something it does not allege in the Complaint, and which it evidently does not intend to establish (*see* Sur-reply 9 n.6) – Lloyds TSB cannot be bound by a consent to jurisdiction that it did not sign. Lloyds Group's letter therefore does not alter the conclusion that on the facts of this action, exercising personal jurisdiction over Lloyds TSB would be unreasonable and inconsistent with due process.

NYCLIB01/NYAMB/138825.3

## CONCLUSION

For the reasons stated by Lloyds TSB above and in its previous submissions on this motion, the Complaint should be dismissed with prejudice, in its entirety.

Dated: New York, New York  
       August 27, 2008

Respectfully submitted,

LOVELLS LLP

By: _____
Marc J. Gottridge (MG 1616)
Andrew M. Behrman (AB 5949)
Lisa J. Fried (LF 6968)
590 Madison Avenue
New York, New York 10022
(212) 909-0600
marc.gottridge@lovells.com
*Attorneys for Defendant Lloyds TSB Bank plc*

-11-