USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,             :
                                      :
          Plaintiff,                  :          07 Civ. 9235 (CSH)
                                      :
v.                                    :
                                      :          **MEMORANDUM OPINION**
LLOYDS TSB BANK PLC,                  :          **AND ORDER**
                                      :
          Defendant.                  :

------------------------------------------------------------

This case requires the Court to decide whether the extraterritorial provisions of the Money

Laundering Control Act of 1986 as amended, 18 U.S.C. §§ 1956(f) and 1957(d) ("the MLCA"),

apply to the conduct of a Swiss branch of a British bank, as alleged in the United States

Government's complaint seeking to impose a civil penalty upon the bank pursuant to § 1956(b)(1).

## I. BACKGROUND

A detailed description of the factual background of the present case appears in this Court's

opinion in *LaSala v. Lloyds TSB Bank PLC,* 514 F.Supp.2d 447 (S.D.N.Y. 2007) ("*LaSala"),*

familiarity with which is assumed.

For present purposes, it is sufficient to say that defendant Lloyds TSB Bank PLC ("Lloyd's

TSB" or "the Bank") is a banking institution organized and existing under the laws of the United

Kingdom of Great Britain and Northern Ireland. The Bank maintains a branch in Geneva, within the

Confederation of Switzerland. Lycourgos Kyprianou and Roys Poyiadjis, two Cypriots who were

officers in AremisSoft Corporation ("AremisSoft"), a publicly traded Delaware company, executed

a "pump and dump" securities fraud scheme which ultimately defrauded AremisSoft shareholders

of approximately $500 million. The complaint against Lloyds TSB in *LaSala* was filed by Joseph

P. LaSala and Fred S. Zeidman, as co-trustees ("the Trustees") of the AremisSoft Liquidating Trust,

created to take title to and prosecute claims assigned by the defrauded shareholders to the Trust. The

Trustees' allegations in *LaSala* most pertinent to the Government's present case against Lloyds TSB

are that Kyprianou maintained or controlled accounts at the Bank's Geneva branch; and that Lloyds

TSB "made it possible, and in many instances easy, for Kyprianou to launder the proceeds of his

criminal and fraudulent conduct through Lloyds' accounts . . . " 514 F.Supp.2d at 451 (quoting

*LaSala* complaint at § 60). The Trustees' complaint against Lloyds TSB in *LaSala* stated four counts

for aiding and abetting Kyprianou's breach of fiduciary duty, aiding and abetting his fraud, fraud,

and negligent misrepresentation, and a fifth count asserting a tort claim arising under Swiss law for

violations of the Swiss penal code and the Swiss money laundering statute. *Id.* at 453. The Court's

decision in *LaSala* granted the Bank's motion to dismiss the Trustees' complaint on the ground of

*forum non conveniens*.

Within two months of the Court's decision in *LaSala*, the Government commenced the

instant action by filing a complaint against Lloyds TSB. The office of the United States Attorney

for this district revealed at that time that pursuant to an agreement previously entered into between

the Government and the Trustees, any recovery the Government might make in this action would be

paid over to the AremisSoft Liquidating Trust.[1]

---

[1] The Trustees did not think it necessary to inform the Court of their pre-existing
compact with the Government when they opposed the Bank's motion to dismiss their action in
*LaSala* on the grounds of *forum non conveniens*. Whether or not the Trustees' nondisclosure
may be regarded as problematic, it plays no part in the Court's resolution of the questions
presented by the Bank's motion to dismiss the Government's complaint in this case.

2

The Government's complaint in the instant case asserts that the Bank violated the MLCA, the American money laundering statute. The doctrine of *forum non conveniens* has no office to perform in an action commenced by the Government. The decisive issue is whether the jurisdictional provisions of the MLCA apply to the particular conduct of the Bank the Government alleges in its complaint. The resolution of that issue requires, first, an examination of the relevant provisions of the MLCA; and second, the Government's description of the Bank's conduct.

## II.  THE RELEVANT PROVISIONS OF THE MLCA

The MLCA begins with 18 U.S.C. § 1956, captioned "Laundering of monetary instruments," and concludes with § 1957. Congress enacted §§ 1956 and 1957 as part of the Money Laundering Control Act of 1986, Pub. L. 99-570, 100 Stat. 3207-18. "Section 1956 penalizes the knowing and intentional transportation or transfer of monetary proceeds from specified unlawful activities, while § 1957 addresses transactions involving criminally derived property exceeding $10,000 in value." *Whitfield v. United States*, 543 U.S. 209, 212-13 (2005). While the MLCA is a criminal statute providing for punishment of violations by imprisonment and fines, § 1956(b)(1) also provides that a violator "is liable to the United States for a civil penalty" in a specified amount. The Government proceeds pursuant to that provision alone in this action against Lloyds TSB. In consequence, the accusatory pleading takes the form of a complaint rather than an indictment.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991) (citation and internal quotation marks omitted). In the MLCA, Congress expressed its intent that the statute be accorded extraterritorial

3

jurisdiction in certain limited circumstances. The pertinent provisions appear in 18 U.S.C. §§

1956(f) and 1957.

Section 1956(f) provides:

> There is extraterritorial jurisdiction over the conduct prohibited by
> this section if –
>
>> (1) the conduct is by a United States citizen or, in the case of
>> a non-United States citizen, the conduct occurs in part in the
>> United States; and
>>
>> (2) the transaction or series of related transactions involves
>> funds or monetary instruments of a value exceeding $10,000.

Section 1956(b)(2) provides:

> For purposes of adjudicating an action or enforcing a penalty
> ordered under this section, the district court shall have jurisdiction
> over any foreign person, including any financial institution authorized
> under the laws of a foreign country, against whom an action is
> brought, if service of process upon the foreign person is made under
> the Federal Rules of Civil Procedure or the laws of the country in
> which the foreign person is found, and --
>
>> (A) the foreign person commits an offense under subsection
>> (a) involving a financial transaction that occurs in whole or in part in
>> the United States; . . . . or
>>
>> (C) the foreign person is a financial institution that maintains
>> a bank account at a financial institution in the United States.

I have quoted these provisions in § 1956(b)(2) in order to gather in one place all references

in the MLCA to foreign persons or institutions. It should be stressed, however, that § 1056(b)(2) is

irrelevant to a consideration of whether subject matter jurisdiction exists in this Court. Subsection

1056(b)(2) deals with obtaining *personal jurisdiction* over a foreign person in cases where *subject

matter jurisdiction* is established by other provisions of the MLCA. There are two provisions in the

4

statute which undertake to establish subject matter jurisdiction where the defendant is foreign. One of these is § 1956(f), quoted *supra*. The other is § 1957, which also provides for limited extraterritorial jurisdiction, but in different terms. Section 1957(a) provides for punishment of "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property . . . " Subsection (d) sets forth two "circumstances":

> (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or

> (2) that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant is a United States person (as defined in section 3077 of this title, but excluding the class described in paragraph (2)(D) of such section).

The case at bar turns upon the proper construction of §§ 1956(f) and 1957, conferring limited subject matter jurisdiction upon the district courts with respect to the conduct of foreigners, and the applicability *vel non* of those provisions to the conduct of Lloyds TSB, as the Government describes that conduct in its complaint.

## III. THE ALLEGATIONS OF THE COMPLAINT

The Government alleges five counts against Lloyds TSB. All arise out of the same nexus of facts. The first four counts allege that the Bank violated four separate substantive provisions of the MLCA. The fifth count alleges that the Bank entered into a conspiracy to violate those provisions.

When the Government files a criminal indictment charging a defendant with conspiring to violate a federal statute and also with substantive violations, the indictment usually charges the conspiracy in the first count and the substantive offenses in the following counts, the conspiracy charge thereby furnishing the context within which the substantive charges may be better understood.

5

As noted, in the case at bar the Government did not seek a criminal indictment against Lloyds TSB; it opted instead for a civil monetary remedy and filed a complaint. Nonetheless, it is useful to begin this analysis of the complaint with the last-pleaded conspiracy count, which performs the same function of informing the reader of the setting and gravamen of the preceding substantive counts.

Count V, ¶ 85 of the complaint, after repeating and incorporating all that had gone before, alleges:

> From in or about June 2000 through in or about January 2004, Lloyds and Kyprianou unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to violate 18 U.S.C. §§ 1956(a)(1), (A), (a)(1)(B), (2)(A) and (2)(B)(i).

The violations of the MLCA alleged in this paragraph to be the objectives of the conspiracy track the four preceding substantive counts. Count I charges that the Bank violated § 1956(a)(1)(A), which prohibits conducting a financial transaction with knowledge that the property involved represents the proceeds of unlawful activity, and with the intent to promote the carrying on of that unlawful activity. Count II charges that the Bank violated § 1956(a)(1)(B), which prohibits the same conduct with the intent to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity. Count III charges the Bank with violating § 1956(a)(2)(A) and (B), which prohibit transporting, transferring or transmitting a monetary instrument or funds "from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States," with the intent to promote the carrying on of unlawful activity, or knowing that the monetary instrument or funds involved in the transaction represented the proceeds of unlawful activity. Count IV charges the Bank with violating § 1957, which prohibits knowingly engaging in a monetary transaction in criminally derived property.

6

The particular conduct on the part of Lloyds TSB that the Government alleges violated these provisions of the MLCA is summarized in ¶ 38 of the complaint. That paragraph contains a list of 80 separate banking transfers, the earliest occurring on December 15, 2000 and the latest on October 17, 2002, which the Government characterizes as "transactions engaged in at Lloyds by Kyprianou bearing the classic hallmarks of money laundering."

There is no dispute that (1) all these transfers were into or out of accounts Kyprianou maintained at the Bank's branch in Geneva, Switzerland; and (2) the transfers were from or to accounts at other banking institutions in Europe.

## IV. DISCUSSION

### A.    Subject Matter Jurisdiction

Lloyds TSB moves to dismiss the Government's complaint, principally pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows a motion to dismiss a complaint for "lack of subject-matter jurisdiction." For the reasons that follow, the Court concludes that the extraterritorial provisions of the MLCA do not apply to the conduct in which the Government alleges Lloyds TSB engaged. Accordingly, the complaint will be dismissed for lack of subject matter jurisdiction.

Preliminarily, it may be noted that Lloyds TSB is not a "United States citizen" as that phrase is used in § 1956(f) or "a United States person" as that phrase is used in § 1957(d)(2). The Government does not contend otherwise. The Government contends that § 1956(f) "explicitly provides for jurisdiction over Lloyds' conduct in this case, because the *underlying conduct* occurred 'in part in the United States'". Govt. Brief at 10 (emphasis added). The "underlying conduct" upon which the Government bases its jurisdictional argument is that "in furtherance of a massive

7

fraudulent scheme perpetrated on a United States company and involving insider trading on a United States market, Lloyds participated in laundering the fruits of that illegal insider trading." *Id.*

The Government criticizes the Bank for having "failed to address in its Memorandum that in fact the Complaint alleges that Lloyds conspired *with others*, not that it acted alone." *Id.* (emphasis added). In fact, the complaint does not quite say that. Count V is the money laundering conspiracy count. It alleges at ¶ 85 that "Lloyds and Kyprianou" conspired to violate the MLCA. When the Government drafted the conspiracy count in the complaint, it did not name the Bank as a co-conspirator with anyone other than its depositor, Kyprianou. To be sure, the complaint refers repeatedly to "a fraud perpetrated against AremisSoft Corporation by Lycourgos Kyprianou *and his co-conspirators,*" *see, e.g.*, Complaint ¶ 1(emphasis added). These are references to the original "pump and dump" conspiracy. The complaint does not name Kyprianou's "co-conspirators" in that underlying securities fraud engineered by Kyprioanou and Poyiadjis; but there is no allegation in the Government's complaint or suggestion in its brief that the Bank was one of them, nor could there have been on the available evidence. The Bank's sole alleged conspiratorial relationship was with Kyprianou, in furtherance of Kyprianou's illicit objective of laundering his share of the AremisSoft fraud proceeds.[2]

The Government's complaint and its brief describe at length and justly condemn the AremisSoft securities fraud conspiracy. However, if Lloyds TSB was not a participant in that underlying criminal conspiracy – and the Government does not even allege that it was – then conduct by others in furtherance of that fraud is irrelevant to the existence *vel non* of the Court's

---

[2] While ¶ 86 of the complaint alleges that the Bank and Kyprianou engaged in financial transactions "in order to promote Kyprianou's underlying acts" of fraud, this falls well short of alleging that the Bank was a participant in that underlying fraud conspiracy.

subject matter jurisdiction over the Bank in respect of the money laundering conspiracy which the Government does allege against the Bank.

That jurisdictional principle is illustrated by *United States v. Columba-Colella*, 604 F.2d 356 (5th Cir. 1979), in a lucid opinion by Judge Wisdom. Defendant Columba-Colella was prosecuted in the Western District of Texas for receiving a stolen vehicle in foreign commerce in violation of 18 U.S.C. § 2313. Columba-Colella was a British citizen and a resident of Juarez, Mexico. In a bar in Juarez, Columba-Colella struck up an acquaintance with a man named Keith, who told defendant that he wanted to sell a car. Defendant, who had lived in Juarez for two years, told Keith that he knew someone who might be interested in buying it. Keith then told defendant that the car had been stolen in El Paso, Texas, and offered defendant half the proceeds of any sale he could arrange. Defendant agreed and took the keys to the car, which was in Juarez, but as he was approaching the car later that evening, he was arrested by Mexican police. The United States indicted defendant, who pleaded guilty but reserved the right to appeal the question of whether the United States had subject-matter jurisdiction over the case. The Fifth Circuit held that it did not.

Judge Wisdom began his analysis by noting that:

> When an allegedly criminal act is performed by an alien on foreign soil courts in the United States have long held that if jurisdiction is to be extended over that act, it must be supported by either the Protective or the Objective territorial theory. Under the protective theory, which does not bear on the resolution of the case before us, a country's legislature is competent to enact laws and, assuming physical power over the defendant, its courts have jurisdiction to enforce criminal laws wherever and by whomever the act is performed that threatens the country's security or directly interferes with its governmental operations. A state/nation is competent, for example, to punish one who has successfully defrauded its treasury, no matter where the fraudulent scheme was perpetrated.

9

> The objective territorial theory looks not to interference with governmental interests but to objective effects within the sovereign state. The theory requires that before a state may attach criminal consequences to an extraterritorial act, the act must be intended to have an effect within the state.

604 F.2d at 358 (citations omitted).

It is striking, and instructive in the case at bar, that Judge Wisdom poses the jurisdictional question in terms of a nation's *competence*: a concept usually associated with less majestic entities. Is a defendant competent to stand trial? Was a testator competent to execute a valid will? But the limitations inherent in the rule of law apply to sovereign states no less than to individuals; and the question that may arise is whether a national legislature was *competent* to enact the criminal statute pursuant to which the nation undertakes to prosecute an alien.

*Columba-Colella* concluded:

> There is no basis for jurisdiction over the defendant in the present case. He is not a United States citizen. He has not threatened the security of this nation or interfered with its governmental function. Although the objective territorial theory applies, the fact that no conspiracy has been alleged means that the theory does not support jurisdiction in the case.

> Had a conspiracy been demonstrated, the defendant could be said to have been engaged in a criminal enterprise. An essential element of which, the theft, occurred in the United States. Had Columba-Colella's intent anticipated and embraced *the car theft in Texas*, that act could be imputed to him. And since the United States is competent to proscribe the theft of property within its borders, it would then have the jurisdiction it asserts in this case.

> The defendant did not conspire to *steal the car*, and the theft in no way depended on any act or intent of the defendant. Whatever injury the owner of the car suffered was complete before Columba-Colella's chance meeting with Keith on the street in Juarez on the afternoon of August 22, 1978, and the agreement their meeting produced. To put it differently, though Columba-Colella's agreement to fence the car

10

> followed Keith's crime, his act, which may have been a crime under
> Mexican law, is *legally unrelated* to the prior crime. His act was no
> constituent element of Keith's act and is not made so by the
> coincidence that the property subject to their agreement belonged to
> a citizen of the jurisdiction in which the theft occurred.

604 F.2d at 359 (emphases added).

The theft of a car in Texas by Keith in *Columba-Colella* is analogous to the securities fraud theft of investors' money in America by Poyiadjis and Kyprianou in the case at bar. The Western District of Texas had no subject-matter jurisdiction over Columba-Colella because that foreign individual "did not conspire to steal the car," and the injury to the American car owner was complete before the defendant agreed to sell it in Mexico. The Southern District of New York has no subject-matter jurisdiction over Lloyds TSB because that foreign bank did not conspire to defraud the AremisSoft shareholders, and the injury to those American investors was complete before the Bank processed the challenged transactions in Kyprianou's accounts in Switzerland.

If it is said that *Columba-Colella* is distinguishable from the case at bar because the indictment in that case did not accuse the foreign defendant of conspiracy and the complaint in this case does, the answer is that, as Judge Wisdom's opinion makes clear, an American court would have subject-matter jurisdiction over a foreign conspirator only if the conspiracy was "intended to produce and producing effects within" the United States. *Strassheim v. Daily*, 221 U.S. 280, 284-85 (1911) (cited and quoted in *Columba-Colella*, 604 F.2d at 359). For that reason, Judge Wisdom observed in *Columba-Colella* that the defendant could be prosecuted in the United States as a conspirator if (but only if) his "intent anticipated and embraced the car theft in Texas," *id.*, which it did not. For that reason, *Columba-Colella* distinguished Fifth Circuit cases applying "the federal

11

drug laws to the conduct of aliens, even when apprehended beyond coastal waters, engaged in importing illegal drugs" into the United States. *Id.* at 360. Such cases:

> have all involved conspiracies, in which aliens who had themselves performed no act within the United States have had imputed to them the acts of conspirators which were performed in the United States. . . . In the present case, however, as we mentioned, the defendant's intent never need have touched upon the United States; his acts may adequately be described without any reference to this country or any detrimental effects within it. Unlike the enterprise of smugglers on the high seas, Columba-Colella's act does not cast a sufficient shadow on the United States to permit jurisdiction.

*Id.*

In such circumstances, the *Columba-Colella* court concluded that "because the defendant's act in this case is beyond its competence to proscribe, Congress did not intend to assert jurisdiction under 18 U.S.C. § 2313." *Id.*[3] While the court acknowledged that "our decision may encourage car thefts in border towns," the result reached "is part of the price a nation must pay to support mutuality of comity between sovereign nations." 604 F.2d at 360. The limitations upon subject matter jurisdiction articulated in *Columba-Colella* resonate in the case at bar, in which the Government argues vehemently that a narrow construction of the MLCA's extraterritorial reach may encourage money laundering in foreign banks.

If it is said that *Columba-Colella* is distinguishable from the case at bar because it did not involve money laundering and the instant case does, guidance may be found in the Supreme Court's decision in *United States v. Cabrales*, 524 U.S. 1 (1998), which considered money laundering's

---

[3] Judge Wisdom's inference, that Congress could not have intended to assert jurisdiction beyond its competence do to so, is perhaps generous to the legislative branch of government. One can imagine Congress enacting a statute with the full intention of asserting jurisdiction, only to be told by the judicial branch that it was incompetent to do so.

12

relationship to the underlying crime for purposes of venue. An indictment was returned in the Western District of Missouri charging defendant Cabrales with conspiracy and with money laundering in violation of §§ 1956 and 1957. Cabrales deposited $40,000 in a Florida bank and, within a week, made four separate withdrawals of $9,500 each. The money deposited and withdrawn was traceable to illegal cocaine sales in Missouri. The Eighth Circuit affirmed the District Court's dismissal of the two money laundering accounts for improper venue in Missouri. The Supreme Court granted certiorari to resolve a conflict with other circuits, which "have held that venue for money laundering offenses is proper in the district in which the funds were unlawfully generated, even if the financial transaction that constitutes the laundering occurred wholly within another district." 524 U.S. at 5. That venue theory, it may be noted, is conceptually indistinguishable from the Government's subject-matter jurisdiction theory in the case at bar. The Court concluded that venue in Missouri for the money laundering charges against Cabrales was improper:

> The laundering alleged in the indictment occurred entirely in Florida. The currency purportedly laundered derived from the unlawful distribution of cocaine in Missouri. The defendant, Vickie S. Cabrales, is not alleged to have transported funds from Missouri to Florida. Nor is she charged, in the counts before us, with participation in the Missouri cocaine transaction that generated the funds in question. In accord with the Court of Appeals for the Eighth Circuit, we hold that Missouri is not a proper place for trial of the money laundering offenses at issue. . .
>
> Here, the crimes described in Counts II and III are defined in statutory proscriptions, 18 U.S.C. §§1956(a)(1)(B)(ii), 1957, that interdict only the financial transactions (acts located entirely in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered.

*Id.* at 3-4, 7. The Court, noting in *Cabrales* that "[t]he the Constitution twice safeguards the defendant's venue right," based its decision upon Article III, § 2, cl. 3 ("Trial of all Crimes . . . shall

13

be held in the State where the said Crimes shall have been committed"), and the Sixth Amendment

(calling for trial "by an impartial jury of the State and district wherein the crime shall have been

committed.").

The district court in *Cabrales* did not dismiss the conspiracy count against the defendant and

the Eighth Circuit did not consider it. However, the Supreme Court discussed the concept of

conspiracy, in terms that are instructive in the case at bar:

> But if Cabrales is in fact linked to the drug-trafficking activity, the
> Government is not disarmed from showing that is the case. She can
> be, and indeed has been, charged with conspiring with the drug
> dealers in Missouri. If the Government can prove the agreement it
> has alleged, Cabrales can be prosecuted in Missouri for that
> confederacy, and her money laundering in Florida could be shown as
> overt acts in furtherance of the conspiracy.

524 U.S. at 9. Thus *Cabrales* instructs that a money launderer may be prosecuted only in the district

where the laundering occurred, unless the Government can prove that the launderer was also a

member of the underlying conspiracy, operating in another district, which generated the illicit

laundered proceeds, in which event the defendant may also be prosecuted in that other district. That

analysis supports Lloyds TSB in the present case, because the Government does not allege that the

Bank was involved in any way with the underlying conspiracy forged by Kyprianou and Poyiadjis

to defraud AremisSoft investors in the United States. The Supreme Court's reasoning in *Cabrales*

is consistent with the Eighth Circuit's holding in *Columba-Colella* that an individual who disposed

of stolen property in Mexico, but played no part in the theft occurring in Texas, was beyond the

subject matter jurisdiction of an American court.

14

*Columba-Colella* and *Cabrales* furnish guidance in the case at bar, although they involved criminal prosecutions and in the instant case the Government seeks a civil penalty. In a criminal case, venue "raises both constitutional and statutory concerns," *United States v. Royer*, 549 F.3d 886, 893 (2d Cir. 2008) (citing Article III and the Sixth Amendment). In a prosecution for conspiracy the Government must prove that at least one act "in furtherance of the charged offense [occurred] in the district of venue," *id.* at 894, failing which the defendant must be acquitted, or if convicted, the conviction cannot stand. *Cf. United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (conviction on substantive insider trading count vacated on appeal where defendant's conduct "was too anterior and remote to confer venue in the SDNY."). In civil actions, one commentator has said that: "Venue statutes generally are concerned with convenience" and "do not raise any constitutional issues," so that "venue rules do not implicate the court's power either to bind the litigants before it, as personal jurisdiction rules do; or to decide a particular type of case, as subject matter jurisdiction rules do." 17 *Moore's Federal Practice,* § 110.01[1] (3d ed. 2008). But these generalities lose some of their force in the case at bar, where § 1956(b)(1), the provision in the MLCA which empowers the Government to seek a civil penalty, is embedded in a criminal statute.

Moreover, the venue provision in the MLCA, subsection 1956(i), provides:

> (1) Except as provided in paragraph (2), a prosecution for an offense under this section or section 1957 may be brought in --
>
> (A) any district in which the financial or monetary transaction is conducted; or

15

(B) any district where a prosecution for the underlying
specified unlawful activity could be brought, if the defendant
participated in the transfer of the proceeds from that district to the
district where the financial or monetary transaction is conducted.

(2) A prosecution for an attempt or conspiracy offense under
this section or section 1957 may be brought in the district where
venue would lie for the completed offense under paragraph (1), or in
any other district where an act in furtherance of the attempt or
conspiracy took place.

These venue provisions with respect to "a prosecution" under the MLCA bring the statute into

compliance with the requirements of the Constitution in criminal cases, as explicated in cases such

as *Cabrales*. It is reasonable to assume that, in the absence of any separate venue provision with

respect to an MLCA action for a civil penalty, they govern this case as well. In any event, these

statutory provisions for venue support the conclusion that this Court lacks subject matter jurisdiction

over Lloyds TSB, which is not named as a participant in the underlying fraud conspiracy in the

United States, and whose conduct consisted exclusively of transfers between its branch in Geneva,

Switzerland and other European banks.[4]

To meet the jurisdictional requirement of § 1956(f)(1) that the money laundering conduct of

Lloyds TSB, a non-United States citizen, "occurs in part in the United States," the Government is

reduced to relying upon the conduct in the United States of securities fraud conspirators, who

---

[4] The Government places a faint reliance on the fact that some of the proceeds
eventually transferred to or from the Bank's accounts may or did pass electronically through the
New York banking system. This peripheral and transitory contact with the United States counts
for nothing in *forum non conveniens* analysis, *see, e.g., Calgarth Investments Ltd. V. Bank
Saderat Iran*, No. 95 Civ. 5332, 1996 WL 204470, at \*6 (S.D.N.Y. Apr.26, 1996) ("debits and
credits at New York bank accounts, without more, do not give New York or the United States an
interest in transactions that otherwise are entirely foreign"), *aff'd*, 108 F.3d 329 (2d Cir. 1997),
and fare no better in subject matter jurisdictional analysis.

16

transferred proceeds from the United States which were eventually deposited in Kyprianou's accounts with the Bank in Switzerland. But this will not suffice under *Cabrales*. In that case, some drug conspirator in Missouri must have arranged for the transfer of the illicit proceeds to the money launderer in Florida. But the Court held that the money launderer, who was not a drug conspirator, did not transfer the proceeds, and whose laundering conduct occurred solely in Florida, could not be prosecuted in Missouri, absent proof that she participated in the underlying drug conspiracy in that state.[5]

I conclude that the plain wording of the MLCA, when read in the light of governing case law, does not confer upon this Court subject matter jurisdiction to adjudicate the Government's claims against Lloyds TSB.

If, contrary to the conclusion I have just expressed, the MLCA could be read as an attempt by Congress to create extraterritorial jurisdiction over Lloyds TSB on the facts of this case, I would decline to exercise that jurisdiction, because to do so would be unreasonable and therefore impermissible.

---

[5] I note in passing that the Government's brief materially exaggerates the allegations of its complaint. The brief says at 10: "In fact, AremisSoft co-conspirators directed the transfer of millions of dollars of the fraud proceeds to be deposited in Kyprianou's Lloyds accounts via faxes originating in the United States." The only reference in support of that assertion is ¶ 42 of the complaint. That paragraph alleges in pertinent part: "In furtherance of the fraud and illegal insider trading conspiracy, Poyiadjis directed his financial manager Roger Meyer to sell the stock and options of Kyprianou, and further directed that the sale proceeds be transferred at Kyprianou's direction to accounts at Lloyds. These transfer instructions, provided by Moore [a Bank officer] at Lloyds, were faxed by Kyprianou to Poyiadjis in New York to Meyer in Switzerland." Contrary to the impression created by the Government's brief, these fraud proceeds were not transferred directly from the United States to the Bank. The transfers to the Bank were arranged by Meyer, a Swiss resident.

17

The rule in the Second Circuit is that to be enforceable by the courts, legislation prohibiting extraterritorial conduct must be reasonable in the circumstances. See, e.g., *United States v. Javino*, 960 F.2d 1137, 1143 (2d Cir. 1992), where the Court of Appeals, reversing a criminal conviction under the National Firearms Act, said that "[e]ven had Congress had intended all foreign manufacturers of firearms to comply with the requirements set out in the [Act], there is substantial question as to whether it could lawfully have done so," since domestic legislation prohibiting extraterritorial conduct is impermissible "when the exercise of [such] jurisdiction is unreasonable." For that proposition the *Javino* court cited Restatement (Third) of Foreign Relations Law of the United States § 403(1) (1987), which states: "[A] state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections to another state when the exercise of such jurisdiction is unreasonable." *See also Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London,* 147 F.3d 118, 131 (2d Cir. 1998) (affirming district court's dismissal for lack of subject matter jurisdiction over suit by foreign investor against foreign defendants under federal securities laws) ("Congress may not be presumed to have prescribed rules governing activity with strong connections to another country, if the exercise of such jurisdiction would be unreasonable in the light of established principles of U.S. and international law.").

Section 403(3) of the Restatement lists a number of factors to be considered in evaluating the reasonableness of a state's purported exercise of extraterritorial jurisdiction. Those factors parallel the factors this Court considered in dismissing the Trustees' suit against the Bank for *forum non conveniens,* and I need not recite them all. It is noteworthy, however, that one of the Restatement factors is "the extent to which another state may have an interest in regulating the activity," § 403(3)(g); and in the decision dismissing the Trustees' action I said: "Switzerland's

18

interest in regulating the conduct of banks within its borders, particularly where the bank is a leading

financial services provider in the country, is great." *LaSala*, 514 F.Supp.2d at 465.[6]

Accordingly, and as an alternative ground for disposition, I conclude that even if the MLCA

could be read to extend subject matter jurisdiction over the claims the Government asserts against

Lloyds TSB in this case, that exercise in extraterritorial jurisdiction is unreasonable, and hence

impermissible in law.[7]   The rule of jurisdictional reasonableness is not ousted because the

---

[6] The Swiss government has made known its concern in this regard in a letter to the
Court dated September 15, 2008 from His Excellency Urs Ziswiler, the Ambassador of
Switzerland to the United States. Ambassador Ziswiler characterizes the case at bar as "an effort
to apply U.S. law to purely domestic Swiss transactions, which would be contrary to both
international law and sovereignty," and adds that "[t]he Government of Switzerland has
previously expressed its concern to the U.S. Government about the effort in this case to assert
extraterritorial jurisdiction." Letter at 2. The Ambassador's letter, while read with respect, is not
of course binding upon the Court; but I am bound to say that, for the reasons stated in text,
Ambassador Ziswiler's analysis is sound.

[7] While the parties have not raised the question in their briefs, there is another arguable
basis for construing any uncertainty about the MLCA's jurisdictional reach in this case. That is
the rule of lenity. The MLCA is in essence a criminal statute. That is why it is found in Title 18
of the United States Code. In *United States v. Santos*, 128 S.Ct. 2020 (2008), the Court
considered whether the term "proceeds" in § 1956(a)(1) of the MLCA means "receipts" or
"profits." The Court chose "profits." Justice Scalia said for the majority:

> From the face of the statute, there is no more reason to think that
> "proceeds" means "receipts" than there is to think that "proceeds"
> means "profits." Under a long line of our decisions, the tie must
> go to the defendant. The rule of lenity requires ambiguous
> criminal laws to be interpreted in favor of the defendants subjected
> to them. . . . Because the "profits" definition of "proceeds" is
> always more defendant-friendly than the "receipts" definition, the
> rule of lenity dictates that it should be adopted.

128 S.Ct. at 2025. In reaching that conclusion, the Court held that the rule of lenity trumped the
Government's *in terrorem* argument that "if we do not read 'proceeds' to mean 'receipts,' we
will disserve the purpose of the federal money-laundering statute, which is, the Government says,
to penalize criminals who conceal or promote their illegal activities." *Id*. at 2025-26. In the case
at bar, the Government advances a comparable *in terrorem* argument, contending that Congress

Government is a party; *Javino* teaches us that.

For the foregoing reasons, I hold that the Court lacks subject matter jurisdiction in this case. The Government's complaint will be dismissed on that ground.

## B.     Other Issues

Lloyds TSB urges other reasons for dismissal: lack of personal jurisdiction over the Bank; time-bar as to most of the Government's claims; and failure to state a claim with respect to the others.

Having held that the Court lacks subject matter jurisdiction, I should not and do not reach these other issues. The question of personal jurisdiction does not arise if there is no subject matter jurisdiction. That is why Rule 12(b) states these grounds for dismissal separately: Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(2) for lack of personal jurisdiction. Time bar and failure to state a claim implicate the merits of the case, which I do not consider in the absence of subject matter jurisdiction.

---

must have intended to thwart domestic criminals' ability to make unfettered use of foreign banks for money laundering. But the Court said in *Santos* that "[w]hen interpreting a criminal statute, we do not play the part of a mind reader," and "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id*. at 2026 (citations and internal quotation marks omitted).

I do not base this opinion upon the rule of lenity, because the parties have not briefed the question. It would appear, however, that the rule, if applied to the reach of the MLCA's extraterritorial jurisdiction, would support the Bank's contention that it cannot reach that far.

## V. CONCLUSION

For the foregoing reasons, the motion of defendant Lloyd TSB to dismiss the complaint is

GRANTED. The Clerk of the Court is directed to dismiss the complaint without prejudice, for lack

of subject matter jurisdiction..

It is SO ORDERED.

Dated:  New York, New York
        March 31, 2009

Charles S. Haight Jr.

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

21