**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

            Plaintiff,

        v.

LLOYDS TSB BANK PLC,

            Defendant.

07 Civ. 9235 (CSH)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION TO AMEND THE JUDGMENT TO GRANT PLAINTIFF
LEAVE TO FILE AN AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT………………………………………………………………………………...……1

   I.  Rule 59(e) Motions for Leave To Replead Should Be Freely Granted, Unless Futile. ....... 1

   II. The PAC Pleads a Plausible Conspiracy Claim and Therefore is Not Futile. .................... 2

      A.  The PAC's Use of Statutory Conspiracy Language Does Not Make it Futile………..2

      B.  Lloyds Misstates the Legal Requirements for Pleading a Conspiracy………………..3

         1.  A Plaintiff Need Only Allege a *Plausible* Conspiracy……………………….....3

         2.  A Plaintiff Need Not Allege Facts Proving the Scope of the Conspiracy………...3

      C.  The Alleged Conspiracy Easily Meets the Plausibility Standard................................... 5

   III. The Court Has Subject Matter Jurisdiction Over the PAC. ................................................ 8

   IV. Exercising Subject Matter Jurisdiction Over the PAC is Reasonable. ............................... 9

CONCLUSION............................................................................................................................ 11

**INTRODUCTION**

After the Court dismissed the Complaint, noting that it "does not quite say" that "Lloyds conspired with *others*," (Dismissal Order at 8), the Government submitted a proposed Amended Complaint ("PAC") with over five pages of new factual allegations clarifying the nature and scope of the alleged conspiracy, including the roles of Roys Poyiadjis and Lycourgos Kyprianou. Lloyds contends that by clarifying the scope of the conspiracy with detailed allegations, the Government is engaging in "sleight of hand" in a "transparent effort to circumvent" the Dismissal Order. (Opp. Br. at 3.) Lloyds's rhetoric is perplexing and apparently unrelated to its primary legal arguments, which seek to inflate the requirements for Rule 59(e) motions and conspiracy allegations. These arguments are meritless. A Rule 59(e) motion should be freely granted unless granting the motion would be futile. The PAC is not futile because it pleads a conspiracy that is plausible based on supporting factual allegations. Lloyds's assertion that the PAC must allege facts that prove the scope of the conspiracy is contrary to well-established law. Because the PAC pleads a plausible conspiracy that involved violations in the United States, the Court has subject matter jurisdiction.

**ARGUMENT**

**I.  Rule 59(e) Motions for Leave To Replead Should Be Freely Granted, Unless Futile.**

Lloyds ignores case law governing Rule 59(e) motions for leave to file an amended complaint and relies instead on decisions on post-judgment motions for reconsideration seeking reinstatement of the complaint. A "Rule 59(e) motion to amend the judgment and grant plaintiffs leave to amend their complaint . . . should be freely granted" unless there is "good reason" to deny the motion, such as futility. *Acito v. Imcera Group*, 47 F.3d 47, 55 (2d Cir. 1995).[1]

---

[1] *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend under Rule 59(e) "should, as the rules require, be 'freely given'" and denial without good reason is an abuse of discretion); *Wiggins v. Weicker*, 104

Accordingly, district courts regularly grant Rule 59(e) motions for leave to file an amended complaint, unless amendment would be futile.[2] Lloyds's reliance on this Court's denials of post-judgment motions for reconsideration under Local Civil Rule 6.3 is misplaced.[3]

## II. The PAC Pleads a Plausible Conspiracy Claim and Therefore is Not Futile.

### A. The PAC's Use of Statutory Conspiracy Language Does Not Make it Futile.

Lloyds argues that the PAC is futile because it alleges that Lloyds "conspired," rather than "agreed" to violate 18 U.S.C. §§ 1956 and 1957. (*See* Opp. Br. at 8-10.) Lloyds simply ignores the plain language of 18 U.S.C. § 1956(h), which does not use the word "agree" and subjects to criminal penalties any person who "***conspires*** to commit any offense defined" in §§ 1956 and 1957. 18 U.S.C. § 1956(h) (emphasis added). Moreover, as Lloyds itself observes, conspiracy actually means "agreement." (*See* Opp. Br. at 8-9.) Given that § 1956(h) uses the word "conspire" and that "conspire" means the same thing as "agree," Lloyds's attack on the Government's use of statutory language is inexplicable. None of the cases cited by Lloyds suggest that using the word "conspire" rather than "agree" is grounds for dismissal.[4]

---

F.3d 351, 1996 WL 617569, at *2 (2d Cir. 1996) (unpublished) (modifying judgment to permit plaintiff to file an amended complaint following denial of 59(e) motion).

[2] *See, e.g.*, *Exportaciones del Futuro S.A. v. Iconix Brand Group, Inc.,* No. 07 Civ. 4145 (LBS), 2007 WL 3306699, at *3 (S.D.N.Y. Nov. 6, 2007) (granting 59(e) motion to file non-futile complaint); *United States v. Portrait of Wally*, No. 99 Civ. 9940 (MBM), 2000 WL 1890403, at *1-*2 (S.D.N.Y. Dec. 28, 2000) (same); *Mina Inv. Holdings, Ltd. v. Lefkowitz,* 184 F.R.D. 245, 257 (S.D.N.Y. 1999) (RWS) (same); *cf. I.L.G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.*, 190 F.R.D. 324, 330-31 (S.D.N.Y. 2000) (PKL) (granting 60(b) motion).

[3] These cases support only the self-evident proposition that the threshold for granting a reconsideration motion is not lowered when the motion is made post-judgment. *See United States v. Dist. Council of New York City*, No. 90 Civ. 5722 (CSH), 2006 WL 1586560 (S.D.N.Y. June 8, 2006); *Valentine v. MetLife Ins. Co.*, No. 85 Civ. 3006 (CSH), 2005 WL 975919 (S.D.N.Y. Apr. 26, 2005) (denying motion for reconsideration under Rule 6.3 and noting that it applies to motions for reconsideration in the absence of trial regardless of whether judgment was entered).

[4] Were this Court to hold that the Government must allege that the conspirators "did combine, conspire, confederate and agree together," as it did in the initial Complaint, rather than "conspire," then the Government requests that it grant the motion to alter with leave to file a pleading consistent with this holding. *See, e.g., Portrait of Wally*, 2000 WL 1890403, at *2 ("the government will not be limited to filing the draft amended complaint attached to its [Rule 59(e)] motion papers, but may amend the complaint in any fashion it deems advisable").

B.      Lloyds Misstates the Legal Requirements for Pleading a Conspiracy.

Lloyds's primary argument for the PAC's futility is that it contains no allegations of fact "that would, if established, make Lloyds TSB a member of a 'broader' conspiracy that included Poyiadjis, others in the U.S. and the underlying securities fraud." (Opp. Br. at 11 (cite omitted)). This argument is premised on assumptions that the complaint must allege facts showing that Lloyds was a member of the alleged conspiracy and allege facts proving that there was one broad conspiracy, rather than two or more conspiracies. Both assumptions are false.

1.      A Plaintiff Need Only Allege a *Plausible* Conspiracy.

Lloyds incorrectly assumes that a complaint must allege facts that, if true, make it *probable* that Lloyds was a member of the alleged conspiracy. The Supreme Court flatly rejected this proposition in *Bell Atlantic Corp. v. Twombly*, holding that subsidiary factual allegations only must make the defendant's membership in the conspiracy *plausible*. 550 U.S. 544, 556 (2007). This "does not impose a probability requirement at the pleading stage." *Id*. *See also Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007).

2.      A Plaintiff Need Not Allege Facts Proving the Scope of the Conspiracy.

Lloyds incorrectly assumes that a complaint must plead facts that disprove the possibility that there were three conspiracies—one involving securities fraud, one involving money laundering in the United States, and one involving money laundering outside the United States— rather than one conspiracy. Parsing a conspiracy into individual components and then requiring particularized allegations that establish the precise scope of the conspiracy would grossly exceed the legal requirement that the alleged conspiracy be plausible.[5] The question of whether there is

---

[5] A set of factual allegations may render plausible several possible conspiracies with different members, time periods and objectives. These conspiracies may be different without being inconsistent. Indeed, it is common

a single conspiracy or "multiple other independent conspiracies is a question of fact for a properly instructed jury," not an issue to be resolved on the pleadings prior to discovery. *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir. 1980). *See also United States v. Chavez*, 549 F.3d 119, 125-26 (2d Cir. 2008).

Not only is it unnecessary for the Government to *plead* facts showing that Lloyds entered into agreements with each of the other co-conspirators and that it was aware of and authorized each of their actions in furtherance of the conspiracy, it is black letter law that the Government need not even prove these things at trial. "[L]iability as a coconspirator" is not "dependent on knowledge of the entire scope of the conspiracy or on knowledge of all the details of the conspiracy, or on knowledge of the identity of all the other conspirators." 16 Am. Jur. 2d Conspiracy § 14 (2008); *see also Alessi*, 638 F.2d at 473 ("it need not be shown that each appellant knew every other member or was aware of all acts committed in furtherance of it"). "Indeed, a defendant may be a co-conspirator if he knows only one other member of the conspiracy." *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008). It does not render an entity immune from liability as a co-conspirator that it is involved only in one level of a conspiracy and is unaware of what other members of the conspiracy are doing at other levels. As the Second Circuit has explained:

> An individual associating himself with a 'chain' conspiracy knows that it has a 'scope' and that for its success it requires an organization wider than may be disclosed by his personal participation. Merely because the Government in this case did not show that each defendant knew each and every conspirator and every step taken by them did not place the complaining appellants outside the scope of the single conspiracy. Each defendant might be found to have contributed to the success of the overall conspiracy, notwithstanding that he operated on only one level.

---

for a prosecutor to seek a superseding indictment broadening a charged conspiracy to include additional defendants, time periods, or violations. For similar reasons, the PAC's allegation of a broader conspiracy than charged in Kyprianou's indictment does not "contradict" the indictment, as Lloyds suggests. (Opp. Br. at 12)

*United States v. Agueci*, 310 F.2d 817, 827 (2d Cir. 1962). *See also United States v. Maldonado-Rivera,* 922 F.2d 934, 963 (2d Cir. 1990) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance"). Accordingly, even if Lloyds were able to prove at trial that it never, for example, "had any communications with AremisSoft's U.S. counsel or Poyiadjis about [U.S. conduct], or that the Bank had any involvement in this conduct," (Opp. Br. at 15), that would not absolve it of liability for the conduct.

      C.      <u>The Alleged Conspiracy Easily Meets the Plausibility Standard.</u>

Without the false premise that the complaint must allege facts *proving* that Lloyds was a member of the alleged conspiracy and *disproving* the possibility that there were more than one related but distinct conspiracies, Lloyds's pleading arguments collapse. The Government far exceeds the minimal requirement of alleging facts that "nudge [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint found insufficient in *Twombly* merely alleged that the purported co-conspirators appeared to engage in parallel conduct, which the Supreme Court noted could easily have been based on business imperative unrelated to any agreement. *Id*. at 567-68. In stark contrast, the PAC is replete with subsidiary factual allegations supporting the general factual allegation that Lloyds entered into the alleged conspiracy and took actions to further it, including that

    a) Lloyds sent the Confirmation Letter to AremisSoft's auditors, falsely stating that that it held almost $10 million blocked in favor of AremisSoft (PAC ¶3);
    b) Lloyds accepted funds from accounts with which Kyprianou claimed to have no legal or beneficial relation, knowing that he held criminal proceeds in accounts (PAC ¶3);
    c) Lloyds engaged in transactions involving proceeds of Kyprianou's insider trading to promote the scheme and make it difficult to locate the proceeds of the scheme (PAC ¶3);
    d) Lloyds opened an account at Kyprianou's request in the name of an AremisSoft subsidiary, transferred the approximately $10 million in blocked funds into that account,

5

and then re-transferred these funds to another account, when it knew that Kyprianou was accused of involvement with the AremisSoft fraud (PAC ¶50); and

e) Lloyds withheld from AremisSoft's counsel the information that Kyprianou controlled certain accounts at Lloyds after being told that AremisSoft was conducting "a group-wide investigation" and was "trying to identify whether any of its subsidiaries have established accounts with your bank." (PAC ¶52).

Lloyds's actions strongly suggest, and easily make plausible, its participation in the alleged conspiracy. Banks do not create and send falsified statements about accounts, such as those in the Confirmation Letter, as part of their standard business practice.

Lloyds's argument that the Confirmation Letter did not assist the pump and dump scheme because it occurred after Kyprianou and Poyiadjis sold their stock fails for several reasons. (Opp Br. at 12.) First, as established above, the Government is not required to plead that Lloyds furthered all parts of the conspiracy. Second, delaying the discovery of the pump and dump scheme *did* further the pump and dump scheme. *See United States v. Milstein*, 401 F.3d 53, 72 (2d Cir. 2005) ("efforts to secrete or launder moneys gained from a scheme for monetary gain, and to safeguard them from discovery or recovery, are to be considered acts in furtherance of the conspiracy"). Third, this argument is based on an assertion of fact that no co-conspirators sold stock after the Confirmation Letter was sent, which the Government strongly disputes and for which there is absolutely no factual support.[6]

Lloyds also argues that sending the Confirmation Letter did not constitute a substantive act of securities fraud. This is irrelevant since the Government did not plead a substantive securities fraud claim. The Government is not "having it both ways" (Opp. Br. at 13) by alleging that Lloyds acted in furtherance of a conspiracy to commit securities fraud and not alleging that

---

[6] Although the Government's position is that it is not necessary to plead that co-conspirators sold stock after the Confirmation Letter was sent, the Government has a factual basis for alleging that such sales did take place. Should the Court believe that these factual allegations are necessary for the Government to state a claim, the Court should grant the motion to alter with leave to file a complaint alleging these facts. *See supra* note 4.

6

Lloyds committed securities fraud. An act that is not itself securities fraud obviously can further conspiracy to commit securities fraud. *Cf. Milstein*, 401 F.3d at 72.

Because the Government need not plead facts justifying the scope of a plausible conspiracy, it was not necessary for the Government to plead additional facts proving that Lloyds was aware that its co-conspirators were acting in furtherance of the conspiracy in the United States. *Cf. United States v. Rosa*, 17 F.3d 1531, 1545-46 (2d Cir. 1994) (Government need not prove that defendant knew that stolen goods were transported across state lines to convict defendant of conspiracy to transport goods across state lines, as long as co-conspirators knew).

Nevertheless, the PAC does allege subsidiary facts making it plausible that Lloyds knew that the conspiracy involved actions in the United States. (*See* Gov't Br. at 6-8.) Lloyds generally does not address these factual allegations, choosing instead to rely on its argument that the Government did not properly plead the existence of a conspiracy. (*See* Opp. Br at 9 n.7.)[7] Moreover, any such argument would conflict with Second Circuit case law. Indeed, in *Alessi*, the Second Circuit held that evidence that a defendant sold airline tickets below market value was sufficient to prove *beyond a reasonable doubt* his membership in a broader conspiracy to steal credit cards, use the credit cards to purchase airline tickets and then sell the airline tickets because "when a retailer is able to sell numerous unlawfully-obtained tickets at a cut rate over a long period of time to many customers it may be inferred as a matter of common sense that he must have appreciated that he was participating in a larger scheme." *See Alessi*, 638 F.2d at 474-

---

[7] Lloyds does attempt to minimize Lloyds connection to the U.S. by asserting that the PAC "does *not* in fact allege that any U.S. lawyer for the Bank received" certain investigation documents from the U.S. (*See* Opp. Br. at 15.) Remarkably, this argument is made immediately after Lloyds *quotes* an allegation from the PAC, stating that the investigation documents "were sent to Lloyds's counsel in the United States." (*Id*. (quoting PAC ¶ 6).) The fallacy of this analysis requires no further comment. It appears that Lloyds was attempting to argue that the Government's allegation is *false* because one of the persons receiving the investigation documents, Jakob Hohn, is a *Swiss* lawyer, according to a website cited by Lloyds. Not only is Lloyds's citation to documents outside the pleadings improper, it also is irrelevant. Hohn was not the U.S. lawyer who received the documents.

75. Based on the allegations in the PAC, it clearly is *plausible* that Lloyds appreciated that it was participating in a larger scheme involving actions in the United States.

### III. The Court Has Subject Matter Jurisdiction Over the PAC.

Lloyds bases its jurisdictional arguments almost entirely on its arguments that the PAC fails to state a conspiracy claim that encompasses actions in the United States, and essentially concedes that if the alleged conspiracy claim in the PAC is properly alleged, then the Court has subject matter jurisdiction.[8] However, Lloyds makes two arguments relating specifically to subject matter jurisdiction that justify a response.

First, Lloyds suggests that the Court may not have jurisdiction if Lloyds did not join the alleged conspiracy until after the actions in the United States were complete. (*Id*. at 19.) This argument raises a factual dispute that is premature. Moreover, it conflicts with allegations in the PAC. Lloyds clearly was a member of the conspiracy by at least the time that it mailed the Confirmation Letter in March 2001. (*See* PAC ¶ 42.) This is before the last of the substantive securities fraud violations in the United States, (*see, e.g.*, PAC ¶ 9, 47; Gottridge Decl. Ex 6 ("Indictment") ¶¶ 59(d), 61(d)), and the last of the substantive money laundering violations in the United States (*see, e.g.,* Indictment Counts 8-10, 12-14), and well before the conclusion of the overall conspiracy.

Second, Lloyds argues at one point that the co-conspirators' actions in the United States that relate specifically to securities fraud cannot be the basis for subject matter jurisdiction because the PAC alleges that Lloyds conspired to launder money and these actions are not substantive money laundering violations. (*See* Opp. Br. at 11.) First, actions in furtherance of a

---

[8] Lloyds states that the Government "misconstrues" *United States v. Columba-Colella*, 604 F.2d 356 (5th Cir. 1979) and *United States v. Cabrales*, 524 U.S. 1 (1998), but does not identify any such misconstrual. (Opp. Br. at 18.) Rather, Lloyds argues that the reason that the PAC does not meet the jurisdictional requirements of these cases is that it fails to "plausibly allege that Lloyds TSB participated" in a conspiracy. As set forth in detail above, the PAC properly pleads the overall conspiracy.

8

conspiracy need not all themselves be substantive violations. Second, the alleged conspiracy is to launder proceeds of securities fraud, among other crimes. Fraudulent statements concealing from investors the co-conspirators' stock sales and transfers of proceeds are plausibly related to this conspiracy. Third, even if the Court entirely discounted what Lloyds asserts is a separate securities fraud conspiracy, the alleged ongoing series of money laundering transactions, which began in the United States where the stock was sold, would be sufficient to establish subject matter jurisdiction.

This final point concerning the ongoing money laundering is particularly significant because Lloyds offers little argument against the plausibility of the money laundering conspiracy in the PAC. Given that Lloyds knew that the funds being transferred to Kyprianou's accounts at Lloyds were proceeds of his AremisSoft share sales in the United States, (PAC ¶¶ 37-38), it is certainly more than plausible that Lloyds entered into a conspiracy that included money laundering activity in the United States.[9]

### IV. Exercising Subject Matter Jurisdiction Over the PAC is Reasonable.

Lloyds asserts that the Court exercising subject matter jurisdiction would be unreasonable under Rule 403(3) of the Restatement (Third) of Foreign Relations Law ("Restatement"), but does not explain why.[10] At any rate, the reasonability of subject matter jurisdiction is established

---

[9] Lloyds's argument that Poyiadjis's U.S. money laundering activities cannot be attributed to Lloyds assumes that Lloyds must directly agree with another member of the conspiracy in order to be liable for his conduct. (Opp. Br. at 16-17.) Yet, as established above, Lloyds would be liable for Poyiadjis's conduct, even if Lloyds did not know of his existence. *See* supra at 4-5. Moreover, subsidiary factual allegations in the PAC make it plausible, at a minimum, that Lloyds knew Poyiadjis was a member of the conspiracy. For example, Poyiadjis's financial manager told a Lloyds manager that certain funds being transferred to Kyprianou's accounts at Lloyds were proceeds of his AremisSoft share sales. (PAC ¶¶ 35, 39.) Should the Court hold that the Government must allege additional contacts between Poyiadjis and Lloyds in order to properly allege that Poyiadjis is a member of the conspiracy, the Government is prepared to do so and would request that Court grant the motion to alter with leave to file an amended complaint alleging these facts. *See* supra note 4.

[10] Rule 403(3) "applies only when one state requires what another prohibits, or where compliance with the regulations of two states exercising jurisdiction consistently with this section is otherwise impossible." Restatement

in this action by the extent to which the alleged conspiracy "has substantial, direct, and foreseeable effects upon [the United States,]," the strong connection "between [the United States] and those whom the [money laundering] regulation is designed to protect, the "importance of the [money laundering] regulation to [the United States]," and the "importance of the [money laundering] regulation to the international [legal] system," among other reasons. Restatement § 403(2).[11]

---

§ 403 cmt. e. Presumably, Switzerland does not require its banks to send falsified documents to auditors, conspire to engage in money laundering, or actually launder criminal proceeds.

[11] Lloyds also incorporates by reference the non-jurisdictional arguments made in support of its motion to dismiss the Complaint for failure to state a claim. (Opp. Br. at 20.) These arguments lack merit for the reasons set forth in the Government's papers opposing Lloyds's motion to dismiss.

## CONCLUSION

For the reasons stated above and in the Government's prior memorandum of law in support of its Motion to Amend the Judgment, the Government respectfully requests that this Court grant this motion and amend the Judgment to give the Government leave to file an amended complaint.

Dated: New York, New York
May 19, 2009

                    LEV L. DASSIN
                    Acting United States Attorney for the
                    Southern District of New York

By: _____
     Jeff Alberts
     Assistant United States Attorney
     One Saint Andrew's Plaza
     New York, New York 10007
     Telephone: (212) 637-1038
     Facsimile: (212) 637-0421

## CERTIFICATE OF SERVICE

JEFF ALBERTS, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That he is an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York, and

That on May 19, 2009, he caused one copy of the "Reply Memorandum of Law in Further Support of Plaintiff's Motion to Amend the Judgment to Grant Plaintiff Leave to File an Amended Complaint," dated May 19, 2009, to be delivered by Federal Express to:

    Marc J. Gottridge, Esq.
    Lovells LLP
    590 Madison Avenue
    New York, New York 10022

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    New York, New York
            May 19, 2009

                                      _____
                                      JEFF ALBERTS
                                      ASSISTANT UNITED STATES ATTORNEY
                                      (212) 637-1038